## SUPREME COURT.

### In the Matter of Opening Eleventh Avenue.

*To constitute a dedication, by deed, of land for the* purposes of a street or avenue, the description in the deed must refer to a street or avenue actually laid out, and the intention to dedicate must be clear or plainly inferable.

Objections to the report of commissioners of estimate and assessment in the city of New York cannot be taken for the first time upon the presentation of the report for confirmation. Parties affected must submit their objections to the commissioners. If not so submitted the court cannot review or pass upon them, even with the consent of the corporation counsel.

Commissioners of estimate and assessment can amend or correct their report, in any case of manifest error, and can reduce awards made as damages for land taken, any time previous to the final confirmation of the report, provided notice is actually given to the parties affected thereby.

The court will not refuse to confirm the report of the commissioners on the ground of inadequacy of valuation. The report in this respect is viewed with even greater favor than the verdict of a jury, and will not be sent back for correction, except in cases of gross inadequacy and inequality and where some wrong principle has been adopted as to the amount allowed.

The power of the commissioners or the court, to alter or amend the report, is not exhausted until the report has been confirmed.

The commissioners are not called upon to adjust conflicting claims of title between parties to the same parcel of land. In such cases it is proper to award the damages to " unknown owners," leaving the claimants to settle the question of ownership subsequent to the confirmation of the report by another proceeding.

A commissioner of estimate and assessment in the city of New York is not an officer of the corporation within the meaning of the charter. An alderman is not disqualified from acting as a commissioner.

Lands used as a cemetery may be exempted by the commissioners from assessment for benefit (*The case of Buffalo City Cemetery* agt. *Buffalo*, 46 *N. Y.*, 506, *explained and distinguished*).

*New York Special Term, July,* 1874, *and April,* 1875.

ELEVENTH avenue, of the width of 100 feet, in the city of
New York, was laid out as far as One Hundred and Fifty-
fifth street, by the commissioners appointed under chapter
115, Laws 1807, and was subsequently opened by legal pro-
ceedings to that point. The legislature, by chapter 565,
Laws 1865, provided for the laying out, by the Central park
commissioners, of that portion of the city above One Hun-
dred and Fifty-fifth street, and under this act a map was
adopted and filed in May, 1869, laying out Eleventh avenue,
from One Hundred and Fifty-fifth street to Harlem river, of
the width of 150 feet. Previous to the filing and adoption
of this map, owners of property north of One Hundred and
Fifty-fifth street had sold and conveyed lands bounding them
on "Eleventh avenue." Part of the land thus sold was in
parcels of city lots, and others consisted of building sites of
various dimensions. No maps were made or filed of any
the lands thus sold, except of the Dyckman farm. Conditions
were attached to this last named map which sufficiently
appear in the opinion of the court. In the year 1870, com-
missioners of estimate and assessment were appointed by the
supreme court to estimate the value of the land required for
the opening of the avenue. On the 29th day of July, 1874,
the commissioners presented their report to the court for
confirmation, allowing only nominal damages to the claimants
of land whose conveyances were bounded on Eleventh avenue
for that portion of land included within the lines of Eleventh
avenue, as originally laid out, if extended northwardly, hold-
ing that, by the conveyances and deeds mentioned, there was
a dedication to public use of at least that portion of the land.
The court refused to confirm the report, holding that there
was no dedication of such land, and directing substantial
awards to be made therefor. The commissioners amended
their report accordingly, making various changes therein, and
submitted the same for confirmation April, 1875. Various

objections were made to its confirmation, all of which suffi-
ciently appear in the opinion of the court.

*E. Delafield Smith*, corporation counsel, *George P. Andrews
& David J. Dean*, for corporation.

*James A. Deering*, for purchasers at Dyckman sale, New
York Institution for the Blind, Jones, Grinnells, Wheelock,
and Church of Intercession, owners.

*John E. Parsons*, for Harris, owner.

*Mr. Woodruff*, for John Dalley, claimant.

*Allison & Shaw*, for Knapp and Parsons, owners.

LAWRENCE, *J.* — My conclusions on this case are these :
I. As to all portions of the Eleventh avenue laid down on
the map of the commissioners of the Central park which
belonged to or formed a part of the Dyckman estate, there
was no dedication, for the reason that the sale of the lands
belonging to the said estate took place in the year 1868, while
the map of the said commissioners was not filed until
1869 ; and that it is quite evident that, while the repre-
sentatives of Dyckman supposed that at some future time
the Eleventh avenue would be extended, they did not
intend to dedicate to the public use that portion of the
land sold by them which would, in case the Eleventh
avenue was extended, be embraced within the limits of such
extension. The question of dedication is one of intent
(*Holdane* agt. *Cold Springs*, 21 *N. Y.*, 474; *Bissell* agt.
*Central R. R. Co.*, 23 *N. Y.*, 64), and the terms of sale under
which the purchasers at the Dyckman sale bought, most
clearly evince that the intention of the sellers was to vest in
the purchasers full title to that portion of the land sold which
would, when the avenue was extended, be embraced within

its limits. The cases referred to by the corporation counsel are all cases in which a map had, previously to the conveyance, been made and filed by the corporate authorities, or where the owner himself sold, by a map made by him which designated the streets thereon laid down, either as existing streets or streets intended to be laid out and opened, and where the grantor did not, as in this case, give to his grantee the right to obtain awards for the streets when the same should be sought to be acquired for the public use. By the advertisement issued by the heirs of Isaac Dyckman, it was expressly stated that "purchasers will bear in mind that they will receive a fair price for the land in the streets and avenues from the city, when said streets and avenues are opened." This seems to me to evince a clear intention not to dedicate the land required for the Eleventh avenue.

II. I do not think that the objections presented on behalf of John Dalley can be considered, said objections not having been presented to the commissioners (*Laws of* 1839, *chap.* 209, *sec.* 5). The consent given by the corporation counsel that said objections be received, qualified by the condition that he waives the point, "so far as he can do so, that the said objections were not submitted to the commissioners," I find no authority in the statute for such waiver, and the consent merely amounts to a statement on the part of the counsel that, if the court wishes to examine into and consider objections upon which the commissioners have not passed, and which they might have passed on if said objections had been taken before them, he (the counsel) will interpose no objection.

It is sufficient to say on this point that the statute having designated the mode and manner in which a party must present his objections, such mode and manner must be pursued or the party cannot be heard.

III. After some hesitation, I have also come to the conclusion, that there was no dedication either in the case of Harris or Jones. The map of the commissioners of the Central park, under which this application was made, was not filed

until 1869. The conveyances and mortgages by Harris and the conveyance to Jones were made prior to the filing of the commissioners' map. At the time said conveyances were made there was no such avenue as Eleventh avenue laid down either on the city map or on the maps made by private parties. I think, therefore, that there is a distinction between these cases and those which are referred to by the corporation counsel, and as I am of the opinion that the doctrine of dedication should not be extended beyond the limits indicated by said cases, I deem it but just to the property owners to hold that the commissioners were not warranted in considering that the land in question had been given for public use without compensation. The report is therefore sent back to the commissioners in order that such awards may be made to the parties interested as in the opinion of said commissioners may be just and equitable.

LAWRENCE, J. — When this matter came before me last year (July, 1874), I sent the report back to the commissioners, on the ground that certain lands for which only a nominal award had been made had not been dedicated to the public use, and that therefore the commissioners had erred in not making full or substantial awards to the owners of the said lands for the value thereof.

No part of the report was confirmed, nor was any question intended to be settled other than the question of dedication. Having determined that question adversely to the views entertained by the commissioners, the report was remitted to them, in the language of the opinion then delivered, "in order that such awards might be made to the parties interested as in the opinion of the commissioners might be just and equitable." The report having been amended by the commissioners is now presented to the court for confirmation, and various objections are urged against such confirmation.

The chief and principal objection is, that the commissioners have erred in reducing some of the awards which were

primarily made to owners of land required for the proposed improvement.

It is contended by the objectors, in the first place, that no objections were taken to the amount of such awards, and that the commissioners, having once acted and passed upon the questions of damage to the propery, their power ceased, and they subsequently lost all jurisdiction over the matter.

This view might be maintained if the report had been, as has some times been the practice of the court, confirmed as to all other matters, except the question of whether the lands embraced within the limits of the extension of Eleventh avenue had been dedicated to the public use. In this case, no part of the report was confirmed. Having reached the conclusion that the alleged dedication had not been made, it became unnecessary to consider any other question, and the report was sent back to the commissioners without the court's passing on any of the other questions. It now appears that the commissioners were, in consequence of the decision of the court as to the question of dedication, compelled to readjust and reduce several of the awards, for the reason that, on the assumption that the land required for that part of Eleventh avenue, which will be embraced between a prolongation of the lines of the old avenue, was dedicated to the public use, they had valued the twenty-five feet of land on either side, which was also required for the improvement, as actually fronting on an existing avenue. When the report came back for amendment, conformably to the decision, it was manifest that, to allow to the owners of these twenty-five feet, awards based on the assumption that such land fronted on an existing avenue, was unjust to those persons who were to be assessed for the improvement, and would be making to such owners a compensation far beyond the actual value of their property. I think that it was entirely within the power of the commissioners to make such reductions. There is nothing which prohibits commissioners of estimate and assessment from correcting manifest errors at any time before the final confirma-

tion of the report. The decision of the court amounted to a decision that, on the previous valuation, the commissioners had acted upon an erroneous principle, and they had corrected their error. The only obligation imposed upon the commissioners, was that of giving the notice to the parties whose awards it was proposed to change, alter or reduce, which is required by the act of 1859 (*Laws of* 1859, *p.* 659), and it appears that such notice was given, and the parties were afforded an opportunity of being heard, and were heard before the commissioners. It is urged that the commissioners have erred in their valuations of the objectors' property, and that such valuation is far below the valuation put upon the same by several experts.

It has long been settled that the report of the commissioners will be regarded with the same favor as, and even with greater consideration than, the verdict of a jury on a mere question of value, as the commissioners are authorized to act upon a personal view and individual knowledge (*Matter of John and Cherry Streets*, 19 *Wend.*, 595 ; *Matter of Central Park*, 35 *How.*, 265). The exceptions to this rule are when the sum allowed is grossly inadequate and unequal as compared with other valuations, or where some wrong principle has been adopted as to the amount allowed (*Matter of Central Park*, 35 *How.*, 265 ; *Matter of Central Park Extension*, 16 *Abb.*, 56). I discover nothing in this case which enables the objectors to invoke either of such exceptions to the general rule.

It is also objected that no remonstrance or objection was filed by any person interested in the report in this matter, to the original awards, or either of them.

If such remonstrance or objection were required, it is sufficient to say that Mr. Powers appears to have objected to the said awards. But no such objection was requisite. As I have above indicated, no part of the report having been confirmed, neither the court nor the commissioners lost control over it, and it was perfectly competent for the commissioners to cor-

rect an error into which they had previously fallen, and which had been pointed out in the opinion of the court. The only formal objections which appear to have been taken to the report are those presented by Mr. Deering, on behalf of the New York Institution for the Blind, the Church of the Intercession, William A. Wheelock and George B. Grinnell, and by Mr. Woodruff, on behalf of Mr. Dalley. The principal objections presented on behalf of these parties I have already considered, but there are one or two others which require allusion. It appears that Mr. Dalley and Mr. Grinnell claim to own the parcel numbered $4\frac{3}{4}$ on the commissioners' map. The commissioners have made the award to "unknown owners." In this, I think they have committed no error. The commissioners were not called upon to adjust conflicting claims of title between these parties. That question can be settled in another proceeding.

It does not very clearly appear from the papers submitted on the argument only, whether the awards for the other lots, 6 A and $6\frac{3}{4}$, were made to "unknown owners;" but I deem it unwise, in view of the fact that this proceeding has been so long pending, to send the report back on that ground. It seems to me that it will be better to confirm the report and let the parties claiming to be the owners of these lots apply to the court in another proceeding for the payment of the awards to them.

I do not regard the objection to Mr. Lewis' competency to act as a commissioner in this proceeding as well taken. A commissioner of estimate and assessment does not appear to me to be an officer within the meaning of section 114 of the charter. His election, therefore, to the office of alderman did not disqualify him from acting as a commissioner.

It is likewise objected that no assessment has been imposed by the commissioners upon Trinity cemetery for the alleged benefit resulting from the extension of the avenue. This, at first, struck me as a very serious objection, but upon reflection I have concluded that no error has been committed by

the commissioners in this respect which should lead to a refusal to confirm the report. It appears that the cemetery does not front on the avenue, but is between 500 and 600 feet southerly from the point where the improvement commences. Under the acts of 1868 and 1813 (*Laws of* 1868, *p.* 1139, *sec.* 4) the commissioners are, in substance, directed to assess all such parties and persons, lands and tenements, *as they may deem to be benefited by* such improvement *to the extent which said commissioners may deem such parties, &c., to be benefited, &c.* (*Laws of* 1813, *sec.* 177).

In view of the peculiar situation of the lands of this cemetery, and of the uses and purposes to which they are applied, the commissioners may well have been justified in arriving at the conclusion that no benefit was derived by those lands from the extension of the Eleventh avenue; and that while it was within the power of the commissioners to subject them to assessment, there being no appreciable benefit derived from such opening, no assessments should be imposed. The cases of the *Riverside Park* and of the *Twelfth Avenue*, cited by the corporation counsel, are in point in this connection. I find nothing in the case of the *Buffalo City Cemetery* agt. *The City of Buffalo* (46 *N. Y.*, 506), which conflicts with the views above expressed. There the cemetery claimed an absolute exemption from assessment under the act of 1847, chapter 133, relating to rural cemeteries, and the court held that the general exemption from taxation and assessment did not include exemption from assessments for local improvements.

In that case the commissioners or assessors had determined that the lands of the cemetery were benefited by the improvement, and had assessed them accordingly. Here the commissioners not having assessed, must, I think, be deemed to have concluded that the cemetery derived no benefit from the opening of the avenue.

I find a brief, among the papers submitted, filed on behalf of Messrs. Parsons and Knapp. I do not find among the

papers any objections on behalf of those owners, and the corporation counsel has stated, in his brief, that the only written objections were those filed by Mr. Deering, on behalf of the clients above referred to. Dalley's objections to the amended report, are among the papers. I shall order that the report be confirmed, if, in point of fact, no written objections were filed on behalf of Messrs. Knapp and Parsons (*Laws. of* 1839, *chap.* 209, *sec.* 5).

The matter may stand over for two days, to enable the corporation counsel, and the attorney and counsel for these objectors to appear before the court and state the facts on this point.

On the 17th of April, 1875, an order was entered confirming the report.