PEOPLE ex rel. ROONEY v. WARNER.

(Supreme Court, Special Term, Albany County. April 22, 1907.)

1. CORONERS—NATURE OF OFFICE.
    A coroner is a public officer.

2. COUNTIES—CORONER'S PHYSICIANS—APPOINTMENT.
    Laws 1878, p. 44, c. 37, provides, in section 5, that the board of supervisors of Albany county shall at every annual session each year choose four physicians to attend to post mortem examinations whenever required by the coroner holding such examinations; their compensation to be fixed by the board. Section 6 provides that the compensation for such physicians shall be audited at each annual session of the board. *Held*, that the designation of a physician, under such section 5, did not create a public office or make the appointee a public officer, and hence his employment ceased on the 31st of December of the year for which he was appointed.

3. SAME—PAYMENT OF SERVICES.
    Under such section 6, c. 37, p. 45, Laws 1878, the board of supervisors were not authorized to audit the accounts of a physician appointed by the board at any other time than at the annual session of the board, or to direct the county treasurer to pay the compensation provided in monthly payments, during the performance of the work.

Application by the people, on the relation of James F. Rooney, for a writ of peremptory mandamus, against Luther C. Warner, as clerk of the board of supervisors of the county of Albany. Motion denied.

George A. Reilly, for relator.
Luther C. Warner, pro se.

FITTS, J. This is an application on behalf of the relator, Dr. James F. Rooney, for an order directing a writ of peremptory mandamus issue to Luther C. Warner, as clerk of the board of supervisors of the county of Albany, requiring him to forthwith transmit to the state civil service commission of the state of New York for certification a pay roll for the month of January, 1907, containing the names of the officers and employés of that county in the civil service, and to include therein the name of the relator, as an appointee and employé of the board of supervisors, occupying and performing the duties of coroner's physician, and entitled to the salary as such for the month of January, 1907. The relator is now, and for a number of years has been, a physician and surgeon residing in the county of Albany. On the 20th day of December, 1905, the board of supervisors of the county of Albany, in pursuance of section 5, c. 37, p. 45, of the Laws of 1878, the same being an act entitled "An act in relation to coroners' fees, their term of office and post-mortem examinations in Albany county," chose four qualified physicians, to attend post mortem examinations to be held during the year commencing January 1, 1906, whenever required by any of the coroners of said county. The relator was one of the physicians so chosen. In the month of December, 1906, the board of supervisors chose Dr. Heffernan, a physician of this city, as a successor to the relator herein.

It is the contention of the relator that the designation of Dr. Heffernan as his successor was illegal and unauthorized, on the ground that the position was embraced and included in the civil service of this county, in the competitive class, and that no examination therefor had been held, and no eligible list prepared from which the board was authorized to choose his successor. It is the contention of the relator that the position to which he was chosen is a public office, that by virtue of his appointment he is a public officer, and that, by reason of the alleged illegal choice or appointment by the board of supervisors of another person to such place or position, he holds over, under the provision of section 5 of the Public Officer's Law, until a successor be legally chosen and qualifies. Accordingly, the first question that arises, and which must be answered, is: Is the position in question a public office, or is it a mere employment?

The act under which the designation was made is known as chapter 37, p. 44, of the Laws of 1878, and is entitled "An act in relation to coroners' fees, their term of office and post-mortem examinations in Albany county." The first four sections of the act relate to the election, term of office, qualifications, and compensation of coroners. Sections 5 and 6 relate to the designation of physicians to attend post mortem examinations, prescribe their duties, and provide for their compensation. Those sections contain the following provisions:

"Sec. 5. The board of supervisors of Albany county shall, at their annual session in each and every year, choose four physicians of good standing, and properly qualified to attend any and all post-mortem examinations held by any of said coroners, or any of the present incumbents of said office, whenever required by the coroner holding such examinations, and said board shall fix the compensation of said physicians, and when fixed shall not be changed during the year for which they are chosen, and no other bill or account of physicians for post-mortem examination shall be audited or allowed by said board after such choice of physicians, except as hereinafter provided. Said physicians shall be chosen by ballot; each, and every supervisor of said county shall have the privilege of casting a vote for one candidate only, and the four candidates having the greatest number of votes shall be declared elected.

"Sec. 6. The said compensation for said physicians shall be audited at each annual session of the board of supervisors, on the sworn statement of said physicians as to the services rendered, and in case said physicians, or either of them, neglect or refuse to attend any post-mortem examination when required by the coroner holding the same, or attending, shall refuse to make such examination, said coroner may call upon any other competent physician to perform the duties of said post-mortem physician in that case or examination, and the said coroner shall make a return of said matter under oath to the board of supervisors at their next annual session and thereupon the board of supervisors may audit and allow a proper and reasonable sum to said physician so called upon for his said services, which said sum shall be deducted and kept out from the amount otherwise payable to such post-mortem physicians."

Prior to the passage of this act in 1878, the coroners of this county had been authorized and were empowered, when necessary, to employ not to exceed two competent surgeons to make post mortem examinations and dissections, and to testify to the same; the compensation therefor to be a county charge. By the provisions of section 2 of chapter 833, p. 1249, of the Laws of 1873, the same being a general act relating to the fees of coroners except in the counties of New York and Kings, it was provided:

"A coroner shall have power when necessary to employ not more than two competent surgeons to make post-mortem examinations and dissections and to testify to same and fix their compensation, the same to be a county charge."

This act was amended by chapter 535, p. 724, of the Laws of 1874, and section 2 thereof was amended so as to read as follows:

"Sec. 2. A coroner shall have power when necessary to employ not more than two competent surgeons to make post-mortem examinations and dissections and to testify to the same; the compensation therefor to be a county charge."

The primary object it would seem of chapter 37, p. 44, of the Laws of 1878, was to select a stated number of physicians to aid the coroners of the county in the performance of their duties, and to render obsolete the custom that had theretofore prevailed of permitting the coroners to choose such physicians as they might desire to perform such work, and whose services then would become a county charge, and who would be able to recover from the county the value of the same. By section 5 of said act, the physicians were designated to attend post mortem examinations only when held by any of the coroners of said county, and whenever required by them so to do, and the board of supervisors were directed to fix the compensation of said physicians

therefor, and when so fixed the same could not be changed during the year for which they were chosen. It is also to be noted that no official name or designation is conferred upon physicians so chosen by the board of supervisors. They are not called in the act coroners' physicians. The act provides that the board shall choose four physicians, who shall attend post mortem examinations only when required by the coroner of the county.

The coroner is a public officer. He is a county officer. He is elected to discharge certain public duties. In the performance of those duties it becomes necessary for him to have the aid of a physician in order to ascertain the cause of death then being investigated by him. The physician has no public duty to perform. Whether there shall be examinations or not rests entirely with the coroner. Which of the physicians he may call is for him also to determine. It is the duty of the coroner to inquire into causes giving rise to sudden or suspicious or violent deaths of persons. In the discharge of such duty, it is oftentimes necessary that the coroner shall have the aid of a physician whose training and professional qualifications enable him to give an opinion as to the cause of death. This peculiar skill or knowledge is the professional service which the physician renders to the coroner, and makes it possible for the latter to properly perform the functions of his office.

Now, in the case at bar, the person appointed is a physician. He acts only when the coroner requests his services in a post mortem examination. His duties are not continuing and permanent. They are occasional and intermittent. He may not attend at or make any examination in a year, or he may make a number of examinations. He is required to keep no place of business for the public use. He gives no bond, and takes no oath of office. He is but an agent or servant of the coroners of the county, appointed by the board of supervisors to procure information needed to aid in the performance of the official duties of the coroners when requested so to act by them or any of them. "A public officer is one who is appointed to discharge a public duty and receives a compensation for the same." Connor v. City of New York, 2 Sandf. 355. A physician appointed to aid the coroner owes no duty to the public, and performs no service to the public. The duties he performs are transient and occasional, and dependent upon whether the coroner requires and requests his aid in a given case, and even then he may refuse to act, and the only penalty incurred is that whatever sum may be paid to a physician employed in his stead shall be deducted from the amount of compensation he would otherwise be entitled to receive. The designation of the relator by the board of supervisors, under section 5 of the act above referred to, to attend post mortem examinations, did not create a public office, and his designation to perform such work did not make him a public officer. The work performed by him under this designation or appointment was in the nature of an employment. Consequently, his employment ceased upon the 31st day of December, 1906.

Even though the employment of the relator did not terminate on the 31st day of December, 1906, the provisions of section 6 of the act above referred to would prevent the granting of the relief sought

for in this proceeding. That section provides that compensation for services rendered by such physician shall be audited at each annual session of the board of supervisors on his sworn statement as to the services rendered. So that, if the employment of the relator had not terminated on the 31st day of December, 1907, the services rendered by him during the month of January, 1907, could not be audited until the next annual meeting of the board of supervisors, to be held in the month of November, 1907. No authority, by the provisions of this act, is conferred upon the board of supervisors to d'rect the county treasurer to pay physicians rendering such services, the compensation to which they may be entitled in monthly installments during the performance of the work.

For the reasons above given, the motion of the relator must be denied, but without costs.

Let an order be entered accordingly.