Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of SADIE KAHL, Respondent, for Compensation under the Workmen's Compensation Law, for Herself and Children, for the Death of Her Husband, ALFRED G. KAHL, *v*. THE CITY OF NEW YORK, Appellant.

Third Department, July 7, 1921.

Workmen's Compensation Law — member of water supply police force of New York city not " employee " within group 41 of § 2 — character not changed by employment in incidental duties.

A member of the board of water supply police force of the city of New York appointed under chapter 724 of the Laws of 1905, as amended by chapter 314 of the Laws of 1906, is a police officer of the city of New

York and not an " employee " within the meaning of that word as used in the Workmen's Compensation Law.

Said policeman was not an employee engaged in operating a vehicle under the provisions of group 41 of section 2 of the statute because at the particular moment of the injury he was riding a motor cycle in the discharge of an incidental duty in going to pay a telephone bill.

APPEAL by the defendant, The City of New York, from an award and decision of the State Industrial Commission, entered in the office of said Commission on or about the 11th day of October, 1920.

*John P. O'Brien,* Corporation Counsel [*Henry J. Shields, John F. O'Brien* and *Isaac F. Cohen,* of counsel], for the appellant.

*Charles D. Newton,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, of counsel], for the respondents.

WOODWARD, J.:

Alfred G. Kahl was appointed as a member of the board of water supply police force under the provisions of chapter 724 of the Laws of 1905, as amended by chapter 314 of the Laws of 1906, section 35 of the act providing that " it shall be the duty of the board of water supply of the city of New York to provide proper police protection to the inhabitants of the localities in which any work may be constructed under the authority of this act and during the period of construction, against the acts or omissions of persons employed on such works or found in the neighborhood thereof; and to that end the said board is hereby authorized and required to appoint a sufficient number of persons to adequately police the said localities for the said periods." The same section provides for the payment of these policemen, and provides that " the said board shall give to each person so appointed a certificate of appointment and certified copies thereof, one of which shall be filed in the office of the sheriff of each county in which any work shall be in process of construction under this act and in which said person shall be authorized to perform his duties." It was further provided that " each of said persons so appointed shall be and have all the powers of a peace officer in the county where any work is being constructed

under the authority of this act, and he shall at all times when on duty wear upon his clothing or have in his possession a shield or other suitable badge of authority which he shall at once exhibit to any person asking therefor. It shall be the special duty of the persons so appointed to prevent breaches of the peace and unlawful depredations and to arrest and bring before the proper magistrates persons employed on the said works or found in the vicinity thereof, who are guilty of offenses against the law punishable by death, imprisonment or fines, or persons whom they may have reasonable cause to believe to be guilty of any of such offenses." Clearly Mr. Kahl was a policeman in the service of the city of New York. The municipality had been authorized to develop an adequate water supply, involving the invasion of rural communities with large numbers of workmen, and the Legislature made one of the conditions of the grant that the municipality should provide adequate police protection. The distinction between these persons, invested with the powers of peace officers, and the employees of the city in the construction of the work, clearly appears in the language of the act, and it has probably never occurred to any one outside the membership of the State Industrial Commission that these policemen were employees of the city of New York in the sense that the word " employees " is used in the Workmen's Compensation Law. But Mr. Kahl, in the discharge of his duties, received an injury to one of his feet by colliding with a telephone pole while riding a motorcycle, and he subsequently died of influenza-pneumonia, and on the application of his widow the State Industrial Commission has made an award, from which the city of New York appeals. The injuries were received on November 8, 1918, and death resulted on the 17th of that month.

Of course it has been held that a policeman of the city of New York is not within the purview of the Workmen's Compensation Law (*Matter of Ryan* v. *City of New York,* 228 N. Y. 16), but the State Industrial Commission has discovered that the claimant's intestate is different from a policeman in the city of New York; that he is an employee engaged in operating a vehicle under the provisions of group 41 of section 2 of the statute (as amd. by Laws of 1917, chap. 705), because at the particular moment of the accident

he was riding a motorcycle in the discharge of an incidental duty in going to pay a telephone bill.  " The idea of an office," says Burrill's Law Dictionary, quoted with approval in *People* v. *Ahearn* (196 N. Y. 221, 243), " clearly embraces the ideas of tenure, duration, fees or emoluments, rights and powers, as well as that of duty; a public station or employment; an employment confirmed by appointment of government," and in *Matter of Hathaway* (71 N. Y. 238, 244) the court say: " ' Public office,' as used in the Constitution, has respect to a permanent trust to be exercised in behalf of the government, or of all citizens who may need the intervention of a public functionary or officer, and in all matters within the range of the duties pertaining to the character of the trust.  It means a right to exercise generally, and in all proper cases, the functions of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place and perform the duty for the term and by the tenure prescribed by law."  Under these definitions the claimant's intestate was so clearly a police officer, discharging a public or governmental function, that it is to " expatiate upon the obvious " to continue the discussion. Being a policeman he did not change his character because he was assigned to an incidental duty.  " Policemen do not change their occupations as they render now this service and now that one in obedience to the call of duty.  The occupation remains single through all its multifarious incidents."  (*Matter of Ryan* v. *City of New York, supra.*)  The duties of a policeman are not those of the city, but of the municipal corporation as an agency of the State in the discharge of governmental functions, and the claimant's intestate occupied the same relation to the city and the State that any other policeman occupies.  If the city of New York had been laying water mains on Broadway, it would have been its duty to police the street and protect the citizens, entirely apart from the work of construction, and this duty was imposed by statute outside the city limits in the development of a water supply.  The police district was enlarged to provide for the special conditions brought about by the demand for an increased water supply, and as the city of New York was not conducting a police force

34    People ex rel. New York Life Ins. Co. *v.* Walsh.

Third Department, July, 1921.    [Vol. 198

for profit at the point where the claimant's intestate was injured, he was not an employee of the city of New York within the letter or spirit of the act, and the award may not be sustained.

This view of the question makes it unnecessary to consider whether there was evidence to establish that the death from influenza-pneumonia was such a "disease or infection as may naturally and unavoidably result" from the accident to the foot of the claimant's intestate. (See Workmen's Compensation Law, § 3, as amd. by Laws of 1917, chap. 705.)    The evidence is slight, at best, and it is better to determine the award upon the basis already discussed.    The Legislature evidently did not consider policemen within the act, because on May 5, 1920, "all policemen of villages" were included within the employees engaged in hazardous employments by an amendment of the statute. (See Laws of 1920, chap. 536, adding to Workmen's Compensation Law, § 2, group 47.)

The award should be reversed and the claim dismissed.

All concur.

Award reversed and claim dismissed.