THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LOUIS FRASQUERY, Defendant.

Court of General Sessions, New York County, January 12, 1933.

*Thomas T. Crain, District Attorney,* and *John McDonnell, Assistant District Attorney,* for the plaintiff.

*Bernard Reiss,* for the defendant.

FRESCHI, J.   The defendant's counsel moves for the appointment of a lunacy commission as provided in section 658 of the Code of Criminal Procedure.

The facts, briefly, are as follows:

An indictment was filed against this defendant on December 6, 1928, charging the crime of grand larceny in the second degree.   On December 7, 1928, the defendant pleaded guilty to petit larceny in Part I of this court presided over by Judge MULQUEEN, my predecessor; and on January 7, 1929, the court appointed two qualified examiners under the Mental Hygiene Law (Cons. Laws, chap. 27, art. 5, § 70 *et seq.*), who reported that the defendant was a mental defective.   This report was confirmed and approved, and

the court ordered that the defendant be committed to the State Institution for Defective Delinquents at Napanoch, N. Y. While the defendant was confined in that institution, there was filed in this court a written communication, dated October 3, 1932, from Commissioner Walter N. Thayer, Jr., of the Department of Correction, State of New York, to the chief clerk of this court, stating that this defendant, who had been subject to careful study and observation in said last-mentioned institution, was found insane and, therefore, unsuitable for further care and custody therein; and pursuant to my order of October 6, 1932, the Superintendent of the Institution for Male Defective Delinquents at Napanoch, N. Y., delivered the said defendant into the custody of the sheriff of the county of New York, and that in turn the defendant be delivered into the custody of the warden of the City Prison of the City of New York, where the defendant shall be detained until thence delivered by due course of law.

In accordance with the practice in such cases, on October 11, 1932, the defendant was committed for further observation and examination as to his sanity to the psychopathic ward of Bellevue Hospital for a period of ten days. A written report has been submitted to me, dated December 6, 1932, stating that Drs. Menas S. Gregory and Samuel Feigin are of the opinion that this defendant, at the present time, is of unsound mind and is suffering from a mental disease known as schizophrenia, and further certify that the character of the mental disorder is of such a nature that the defendant requires care and treatment in a hospital for the insane.

When this case appeared upon my day calendar on December 8, 1932, the counsel, who had been previously assigned by the court to advise with and represent the defendant on the criminal charge, appeared and to him was read the report made and filed by the above-named physicians of Bellevue Hospital. Counsel's attention was called to the right of the defendant to demand a hearing as an alleged insane person as provided in section 836 of the Code of Criminal Procedure, which reads as follows: " If such person be found to be insane, and no demand is made for a hearing in behalf of the alleged insane person, a judge of a court of record of the city or county or a justice of the supreme court of the judicial district in which the alleged insane person is confined, shall discharge him from imprisonment and instead commit him to a state institution for the care, custody and treatment of the insane, where he shall remain until restored to his right mind. * * * When an insane person, committed to a state institution in accordance with the provisions of this section, shall have been restored to his right mind, the superintendent of such institution shall inform the judge

who committed the person of the fact of his recovery, and such person shall be returned forthwith to the authority by which he was originally held in confinement; and the proceeding for which the person was in such confinement shall then be resumed." Thereupon counsel stated that the defendant waived a hearing. This was in the absence of the defendant. There is grave doubt in my mind as to whether, under the peculiar circumstances of this case, counsel assigned to defend in a criminal case can properly waive any such hearing to determine judicially and in the mode prescribed by law the sanity of the defendant, before a court of record can legally commit the defendant to a State institution for the care, custody and treatment of the insane. To make such a commitment on the mere report of the hospital authorities without a judicial hearing and determination in the premises involves many elements of an uncertain character, with the added personal responsibility, perhaps, of the judicial officer making thereon any such commitment. (See *Ledwith* v. *Rosalsky*, 244 N. Y. 406.)

As was stated in the learned concurring opinion of Judge POUND in the case of *People ex rel. Ledwith* v. *Board of Trustees* (238 N. Y. 403, at p. 409): " Insanity is a condition, not a crime. A man may not be committed on a charge of apparent insanity, to be held for thirty days while the physicians are studying his case. The authorities are to proceed with the duty of having his condition determined judicially, not medically merely, during the period of commitment."

Sections 658 and 659 of the Code provide:

" § 658. When a defendant pleads insanity, as prescribed in section three hundred and thirty-six, the court in which the indictment is pending, instead of proceeding with the trial of the indictment, may appoint a commission of not more than three disinterested persons, to examine him and report to the court as to his sanity at the time of the commission of the crime.

" The commission must summarily proceed to make their examination. Before commencing they must take the oath prescribed in the code of civil procedure, to be taken by referees. They must be attended by the district attorney of the county, and may call and examine witnesses and compel their attendance. The counsel of the defendant may take part in the proceedings. When the commissioners have concluded their examination, they must forthwith report the facts to the court with their opinion thereon.

" § 659. If the commission find the defendant insane the trial or judgment must be suspended, until he becomes sane; and the court, if it deem his discharge dangerous to the public peace or safety, must order that he be, in the meantime, committed by the sheriff

to a state lunatic asylum, and that upon his becoming sane he be redelivered by the superintendent of the asylum to the sheriff."

The appointment of a commission is discretionary. (See, also, *People* v. *McElvaine*, 125 N. Y. 596, 605, and *People* v. *Tobin*, 176 id. 278, 284.)

Inasmuch as this case now appears upon the calendar of this court and may at any time be assigned for trial, it is deemed advisable to appoint a lunacy commission to determine the defendant's sanity at the time of the commission of the alleged crime and in order to determine whether the defendant is deemed a person dangerous to the public peace or safety at the time of the examination.

Motion granted.