THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROBERT IRWIN, Defendant.*

Court of General Sessions of County of New York, March 8, 1938.

*Thomas E. Dewey, District Attorney [Jacob J. Rosenblum, Assistant District Attorney, of counsel], for the plaintiff.*

*Samuel S. Leibowitz, for the defendant.*

FRESCHI, J. The defendant prays that this court vacate and set aside its order herein of August 30, 1937, creating and appointing, pursuant to section 658 of the Code of Criminal Procedure, a lunacy commission consisting of Archibald R. Watson, Esq., a practicing lawyer, and the psychiatrists Dr. Israel S. Wechsler and Dr. Charles D. Ryan, to inquire into the mental condition of the defendant and report to this court the facts with their opinion thereon as to his sanity at the time of the commission of the alleged crime, and also whether he is in a state of idiocy, imbecility, lunacy or insanity so as to be incapable of understanding the proceeding or making his defense on the trial of the indictment charging murder in its first degree.

The contention of the defendant on this application is that Mr. Watson became disqualified and by operation of law ceased to be a member of the lunacy commission at the time that he accepted,

---

* Report of Lunacy Commission. See *post*, p. ——.

pending the commission's examination in this case, the office of county clerk of New York county, to which he was appointed by the Appellate Division of the Supreme Court in the First Judicial Department in accordance with section 1 of article X of the New York State Constitution. The theory advanced by the defendant's counsel is that Mr. Watson now holds two public offices and that, whether they be compatible or incompatible, he surrendered and forfeited membership on the lunacy commission when he accepted the position of clerk of the county. Section 895 of the New York city charter is cited in support of this motion. So much of that section as applies here states that " Any person holding office, whether by election or appointment, who shall, during his term of office, accept, hold or retain any other civil office of honor, trust or emolument under the government of the United States, * * * or of the State * * *, or who shall hold or accept any other office connected with the government of the city * * *, shall be deemed thereby to have vacated any office held by him under the city government * * *. No person shall hold two city or county offices, except as expressly provided in this charter or by statute; nor shall any officer under the city government hold or retain an office under a county government."

The argument of counsel for the defense is that the restrictions of this charter provision make the position that Mr. Watson occupied on the lunacy commission vacant. The claim is that membership on such commission is either a city or county office and that the prohibition of the statute extends to this case, thereby leaving the commission without its full membership and that, in consequence, its acts, report and opinion became a nullity. My opinion is that this contention is untenable for many reasons.

Judicial inquiries by criminal courts to determine the sanity of a person charged with a criminal offense have been used and conducted during and since the days of the common law (*People* v. *Rhinelander*, 2 N. Y. Cr. Rep. 335) wherever a question has arisen as to whether the accused was *compos mentis* or not. In this State a court shall determine the condition of the mind of the accused, in a proper case, especially where a special plea of insanity to the indictment is entered and there appear sufficient and satisfactory proof, and there is reasonable ground for believing that a defendant is insane, instead of proceeding with the trial; and, in such cases, it must be remembered that the examination, conducted under the authority of the statute, does not relate to the fixing of the grade of criminal responsibility (*People* v. *Nyhan*, 171 N. Y. Supp. 466, 467), which is a matter entirely for the trial court; but instead, the sanity of the accused, as that term is understood in medical science, as distin-

guished from legal sanity, at the time of the investigation must be determined.

Great strides have been made to overcome " savage and inhuman laws " of the past, and the present system of examination by and through a lunacy commission, preliminary to a trial, has for many years accomplished much, served the State well, and attained just and desirable results. The appointment of these commissions has been and is part of the judicial process. In a few cases errors have crept in. Scientific methods of inquiry are not altogether beyond error and it is too much to expect mathematical and absolute certainty in all these matters. No matter what other system may be proposed and established as a substitute, in an endeavor to find the correct solution and judgment, all factors, inferences and opinions of men and judges will have to be the same no matter what system shall be adopted in the future. In the case of *People* v. *McElvaine* (125 N. Y. 596, 600) the Court of Appeals wrote: " It is now a fundamental principle in all civilized countries that this defense, when established, shall furnish to the accused not only a protection against conviction for crime, but a sufficient reason why he should not be tried or sentenced, or if tried and convicted, why the judgment of the court should not be executed; and this rule has, for a long time, been a part of the statutory law of this State. (§ 20 Penal Code; 2 R. S. 697, § 2.) These statutes express a humane principle, and the law makers of the State have, by numerous provisions, so guarded the rights of such persons, that they cannot be lawfully punished for an act which was committed by them while in a state of insanity, or when they have become insane during or after a trial or conviction. (§§ 336, 658, 481, Code of Criminal Procedure.) It is the duty, as it should always be the inclination, of courts to give effect to these provisions of law, and, so far as human judgment and intelligence can determine, to see to it that no person is punished for an act done while mentally incapable of distinguishing the character of such act, or is incompetent to understand and apprecitate the cause and object of his punishment."

It would be a travesty on justice to force a defendant to trial if, by reason of his insanity or mental state, he be unable to comprehend the nature of the proceedings against him or to advise with his counsel and plan his defense. (*People* v. *Whitman,* 149 Misc. 159, 162, 163.) The appointment of a commission is discretionary. (*People* v. *Tobin,* 176 N. Y. 278, 284, 285. See, also, *People* v. *Frasquery,* 146 Misc. 137.)

The court has a definite objective and responsibility in such cases. All such investigations, no matter under what form of law they are conducted, must preserve the rights of the parties concerned and

whatever is done must ultimately have the full sanction and approval or disapproval of a judicial tribunal or of a judge of the court, in the spirit of our fundamental laws and consonant with orderly government in the administration of justice. The protection of society demands nothing less than a fair, impartial and intelligent examination and inquiry. The courts should accept nothing less.

A lunacy commission, when duly appointed under our system, functions as a temporary agency, its membership being of a temporary character and incidental to the prosecution of the criminal charge, and is employed as an aid to the conscience of the court. Its work in finding the facts and reporting them to the court is advisory and subject to the action of the court. The finality of the proceeding is established by the court's order in the premises. As a means to that end, the lunacy commission justifies itself and stands between the individual and the State to prevent abuse and an illegal impairment of the liberty of the accused, on one hand, and, on the other, it safeguards the people in the administration of criminal justice. The commission develops the evidence as a fact-finding body, guided by a lawyer through the maze of legal technical procedure and questions which might often arise affecting the constitutional rights of the accused, whose mental state only is under investigation. In the main, lunacy commissions have attained a successful and useful purpose in the courts.

Counsel does not dispute the legality and propriety of Mr. Watson's acceptance of the commission position at the time of his appointment as a member thereof. The propriety and effect of the holding of these two places at the same time, after his appointment to the office of county clerk, are attacked and submitted for consideration on this motion. Concededly, there is no constitutional provision preventing a lunacy commission member from accepting an appointment as county clerk; and the common law cannot be successfully invoked upon the principle of implied resignation as the effect of the acceptance of one office by the incumbent of another. (*Marcrum* v. *Board of Supervisors*, 141 Misc. 358, at p. 360.) The charter, as above quoted, is the only statute which the defense urges as a prohibition. The Constitution of the State of New York, article X, section 1, as amended in 1935, provides for the election and term of office of sheriffs, clerks of counties and district attorneys for the counties of the State and says: " Sheriffs shall hold no other office." The Constitution does not preclude the other officers from accepting any other office. These positions held by Mr. Watson are not, in the light of the constitutional provisions or charter, repugnant to or incompatible with each other, so as to make their holding by the same person against public policy. A general and

thorough discussion of the common law on the incompatibility of offices may be found in *People ex rel. Ryan* v. *Green* (58 N. Y. 295, at p. 304). (See, also, 100 A. L. R. 1162; L. R. A. [1917-A], p. 216; 35 C. J. 461.) In the *Ryan* case (*supra*) it was held that his holding the office of Assemblyman was not incompatible with that of deputy clerk of the Court of Special Sessions and did not constitute a resignation of his local position.

In the case at bar the business of each position is quite independent of the other; and in their relations they do not conflict, so that in the performance of all the duties thereof respectively required by the same person, there is no inconsistency. In the absence of specific statutory or constitutional prohibition, before Mr. Watson can be disqualified, it must be conclusively shown that one position of which he is the incumbent is subordinate to and inconsistent with the other, so that *per se* each would interfere with the other, and thereby make them incompatible at common law. (Throop on Public Officers, § 30 *et seq.*) In such case, one office is *ipso facto* vacated by the acceptance of another. (*People ex rel. Ryan* v. *Green*, 58 N. Y. 295.) The element of contrariety and antagonism in the discharge of the duties of both offices enters into all such cases as an important element and factor.

It is my judgment that not alone are the duties of the position on the lunacy commission not inconsistent with or repugnant to those of the office of county clerk, or incompatible for reasons of public policy as was stated in *People ex rel. Earwicker* v. *Dillon* (38 App. Div. 539), but the office, if it be such, is not a public office. (*People ex rel. Rooney* v. *Warner*, 104 N. Y. Supp. 279, 282; *New York Fire Dept.* v. *Atlas Steamship Co.*, 106 N. Y. 566; *Matter of Hathaway*, 71 id. 238, 243, 244; *United States* v. *Germaine*, 99 U. S. 508; *Metcalf & Eddy* v. *Mitchell*, 269 id. 514, 520; *Matter of Dawson* v. *Knox*, 231 App. Div. 490, 492; *Ledwith* v. *Rosalsky*, 244 N. Y. 406, 410; 46 C. J. 924, § 3; *Kingston Associates, Inc.*, v. *LaGuardia*, 246 App. Div. 803, affg. 156 Misc. 116; *People ex rel. Henry* v. *Nostrand*, 46 N. Y. 375.)

The argument by the defense that by the acceptance of the office of county clerk, Mr. Watson, in effect resigned his membership on the commission in this case is without justification or support in reason, fact or law. (See *Matter of Marcus*, 139 Misc. 675.)

Assuming that Mr. Watson's position on the commission is a public office, by no stretch of the imagination could it be regarded either as a city or county office. And, certainly, it cannot be regarded as a civil office of the State. What the charter prohibits is the holding of two city or two county offices at the same time; besides it creates a vacancy in the city position which a person has

occupied, when he accepts some other civil office of the State while holding an office in the government of the city. It is the acceptance and retention of a State office like that of county clerk (*Olmstead* v. *Meahl*, 219 N. Y. 270) which creates the vacancy in the city office if it be held by the same person at the same time. The fact that a member of a lunacy commission is not a city officer under the New York charter distinguishes the case at bar at once from the *Hulbert* case (*Matter of Hulbert* v. *Craig*, 124 Misc. 273; affd., 213 App. Div. 865; affd., 241 N. Y. 525), relied upon by counsel for the defense.

There the relator held a city office that was held forfeited by the subsequent acceptance of a State office. Neither are the cases of *People ex rel. Kelly* v. *Common Council* (77 N. Y. 503) and *Metzger* v. *Swift* (258 id. 440) applicable.

Finally, it is to be noted that no constitutional oath is administered to a member of the commission. The only oath required is that prescribed by section 126 of the Civil Practice Act that he will faithfully, honestly and impartially discharge the trust committed to him. It is the same oath taken by referees, etc. To rule that Mr. Watson holds two public positions or offices in the light of the facts here would be tantamount to saying that no lawyer could be legally appointed as a referee, receiver or member of a lunacy commission in more than one case without forfeiting the position in another, if held at the same time. Like a referee, Mr. Watson is in this case an arm of the court to aid it as an expert skilled in his profession in procuring needed information; and his acts in that respect are solely advisory. The position has no earmarks of officialdom; and it is totally lacking in official characteristics, even though the designated officer functions under public authority, but yet affecting only the affairs of a particular individual in a specific case named and specified in the appointment. There are no general powers conferred upon him to act in respect to all like cases. The emoluments for the duties performed in this transient and occasional manner are only such as grow out of and pertain to the duties actually performed to meet special exigencies. (*Matter of Hathaway*, 71 N. Y. 238, 243, 244; *New York Fire Dept.* v. *Atlas Steamship Co.*, 106 id. 566; *Kahl* v. *City of New York*, 198 App. Div. 30, at p. 33.) There is no continuing and permanent tenure of office; nor is there any public judicial duty to be discharged. Then, again, the report of the commission is for temporary purposes merely and cannot be regarded as a final adjudication even as to the prisoner's present condition. (*People ex rel. Thaw* v. *Lamb*, 118 N. Y. Supp. 389.)

When a judge of the Court of General Sessions, as a State judicial officer (*Ledwith* v. *Rosalsky*, 244 N. Y. 406, 410), appoints an attorney at law, who comes very near being a public officer, on a

lunacy commission, he neither transfers to nor vests in the person so selected any of the powers of a judge of the said court; and when the matter assigned to him is examined and report thereon is made, his authority is at an end and his functions cease. (*People* v. *Rhinelander, supra*, at p. 341.) Clearly, the designated person does not exercise any sovereign power in that case, which is one of many other tests applied in order to fix the character and status of the office, whether public, or private, or *quasi*-public. (See *United States* v. *Hartwell*, 6 Wall. 385, 393; *Matter of Dawson*, 231 App. Div. 490, 492; Throop on Public Officers, §§ 3-10.) In all such cases we must look to the nature of the service rendered, among other things; so states Mr. Justice MILLER in *United States* v. *Germaine* (99 U. S. 508, at p. 511) where civil surgeons appointed by the Commissioner of Pensions were held not to be officers of the United States. (See, also, *United States ex rel. Lotsch* v. *Kelly*, 86 F. [2d] 613.) Another instance, the appointment of a village attorney by a board of trustees of the village does not make him a public officer and the giving of advice is not deemed to be the exercise of independent government power. (*Fisher* v. *City of Mechanicville*, 225 N. Y. 210, 212.) (See, also, *People ex rel. Rooney* v. *Warner*, 104 N. Y. Supp. 279, 282.) The making of a report is not a judicial function in any sense of the word.

There is no question in my mind about the eligibility of Mr. Watson due to the statutory prohibition against holding two public offices at the same time, because services on a lunacy commission under a temporary appointment for a specific purpose do not constitute the holding of a public office in the law. Support for this is found in the case of *Matter of Opening Eleventh Avenue* (49 How. Pr. 208; affd., 81 N. Y. 436), in which it was held that commissioners of estimate and assessment appointed by the court did not occupy a public office within the purview of the statute. The *Eleventh Avenue* case involves objections to the competency of one of the commissioners to act in the proceeding after his election to the office of alderman, while acting as such commissioner; and it was held that he was not thereby disqualified from acting in the former capacity.

Although Mr. Watson offered to resign from the commission when he was appointed county clerk, this court deemed it of the highest importance to the State that he continue his services on the commission to which he brought a vast training, experience and ability as one of the leaders of our bar, in co-operation with Professor Wechsler, a noted neurologist of Columbia University, and that other well-known and skilled psychiatrist, Dr. Ryan of Cornell University — a lunacy commission which is notable and outstanding for its

many eminent qualifications and high order of fairness and integrity.

Fortunate indeed is the court that can secure the services of such eminent professional men as these to serve in any capacity; surely the maximum statutory compensation allowable in such cases, which is only nominal, is no true measure of their value and worth for the quality of service of which they are capable.

This motion of the defendant must be denied.