In the Matter of the Application of EDMUND J. MACNAMARA, to Vacate and Quash an Alleged Subpœna Duces Tecum Purporting to Have Been Issued by the Attorney-General of the State of New York.

Supreme Court, New York County, October, 1926.

Corporations — sale of securities — investigation by Attorney-General under General Business Law, art. 23-A (Martin Act) — motion to quash subpœna on ground that General Business Law, § 352, is unconstitutional — said section authorizing secret investigation and subpœnaing of witnesses is constitutional — General Business Law, § 359, as amended by Laws of 1926, chap. 617, affords immunity to one testifying in any investigation by Attorney-General — General Business Law, § 352, does not authorize Attorney-General to make general examination of books — Attorney-General cannot disclose confidential information — person or firm being examined should be allowed counsel — power to subpœna and examine witnesses under oath may be delegated to administrative officer.

Section 352 of article 23-A of the General Business Law (Martin Act), authorizing the Attorney-General under certain conditions to make a private and secret investigation of persons or firms engaged in the sale of corporate securities, is not unconstitutional, for the Attorney-General is not acting as a prosecuting official but merely in his capacity as an independent executive officer of the State government who is charged with the duty of determining whether or not persons or firms engaged in the sale of corporate securities shall be denied

that right, and furthermore a public investigation on charges which may possibly be unfounded might work great injustice and accomplish the ruin of the person being investigated.

The contention by the petitioner on a motion to quash a subpœna that such an investigation must be made under judicial supervision cannot be sustained, for the State has the power to authorize an investigation by an administrative officer and to give to him the power to subpœna and examine witnesses.

Any witness who is called to testify in an investigation by the Attorney-General is given immunity by section 359 of the General Business Law (as amd. by Laws of 1926, chap. 617).

The Attorney-General does not have the power under section 352 of the General Business Law to institute a general investigation of all the books of the person or firm being investigated, but is limited to an investigation relative to the matter in question, and undoubtedly, if the Attorney-General went beyond that, he could be restrained.

The contention by the petitioner that an investigation by the Attorney-General compels the disclosure of trade secrets and confidential dealings by the petitioner with third persons is without merit, for the law expressly prohibits the disclosure of confidential information obtained upon inquiry and any disclosure thereof constitutes a misdemeanor.

While the petitioner does not have the right to counsel on an investigation by the Attorney-General, still it is proper for the Attorney-General to permit a witness to be accompanied by counsel at the examination.

The power to subpœna and examine under oath is not necessarily judicial in its nature and can be delegated to the Attorney-General acting as an independent executive officer under the provisions of the statute.

APPLICATION to quash subpœna *duces tecum* issued by the Attorney-General under article 23-A of the General Business Law (added by Laws of 1921, chap. 649, as amd. by Laws of 1923, chap. 600; Laws of 1925, chap. 239, and Laws of 1926, chap. 617).

*Louis Marshall* and *Nash Rockwood*, for the petitioner.

*Albert Ottinger*, Attorney-General [*Keyes Winter* of counsel], opposed.

DONOHUE, J. The petitioner has moved to vacate a subpœna served by the Attorney-General of the State of New York commanding the applicant to appear before him to testify and to produce certain papers in regard to the practices of the Wall Street *Iconoclast* and George Graham Rice in the sale of securities in and from the State of New York. The issue raised by this motion is the constitutionality of section 352 of the General Business Law (as amd. by Laws of 1926, chap. 617). It also brings into question incidentally section 359 of that act (as amd. by Laws of 1926, chap. 617).

The validity of the subpœna, disregarding rhetorical exaggerations in the language in which the objections are couched, is attacked mainly on the ground that the provisions of the statute referred to are violative of the " due process of law " provisions

of the Constitution of the State and of the United States. Another ground of attack is that the power to issue a subpœna and to examine a witness under oath in a preliminary investigation is a judicial function which cannot be delegated to the Attorney-General.

The law under consideration constitutes article 23-A of the General Business Law, as amended, and is entitled " Fraudulent Practices in Respect to Stocks, Bonds, other Securities and Commodities," and is commonly referred to as the Martin Act.

Section 352 of the law, the constitutionality of which is attacked, provides that: " Whenever it shall appear to the attorney-general, either upon complaint or otherwise, that in the advertisement * * * or distribution * * * of any stocks, bonds, notes, evidences of interest or indebtedness or other securities, * * * any person, partnership, corporation * * * employs or is about to employ any device, scheme or artifice to defraud or for obtaining money or property by means of any false pretense, representation or promise, or that any person * * * shall have made * * * in the state fictitious or pretended purchases or sales of securities or commodities, or shall have engaged in * * * or is about to engage in any practice or transaction or course of business relating to the purchase or sale of. securities or commodities which is fraudulent or in violation of law and * * * which would operate as a fraud upon the purchaser, or that any dealer, as defined by section three hundred and fifty-nine-e of this article, has sold * * * or is offering for sale any security or securities in violation of the provisions of said section * * * or he [the attorney-general] believes it to be in the public interest that an investigation be made, he may in his discretion either require or permit such person * * * to file with him a statement in writing under oath or otherwise as to all the facts and circumstances concerning the subject matter which he believes it is to the public interest to investigate, and for that purpose may prescribe forms upon which such statements shall be made.

" The attorney-general may also require such other data and information as he may deem relevant and may make such special and independent investigations as he may deem necessary in connection with the matter. The attorney-general, his deputy or other officer designated by him is empowered to subpœna witnesses, compel their attendance, examine them under oath before him or a magistrate, a court of record or a judge or justice thereof and require the production of any books or papers which he deems relevant or material to the inquiry. If a person subpœnaed to attend such inquiry fails to obey the command of a subpœna without reasonable cause, or if a person in attendance

upon such inquiry shall without reasonable cause refuse to be sworn or to be examined or to answer a question or to produce a book or paper when ordered so to do by the officer conducting such inquiry, or if a person   *   *  . *   fails to perform any act required hereunder to be performed, he shall be guilty of a misdemeanor."

The New York act finds its counterpart in similar and perhaps more drastic legislation in forty-five other States, all designed to curb a certain evil. These statutes are generally referred to as Blue Sky Laws.

The object of the New York statute, as well as of the Blue Sky Laws in general, is concisely stated as follows by Judge CARDOZO in *Matter of Ottinger* v. *Civ. Serv. Comm.* (240 N. Y. 435, 438): "The Legislature in 1921, by the adoption of chapter 649 of the laws of that year, clothed the Attorney-General with large powers for the prevention and punishment of frauds in the sale or circulation of bonds, stock certificates and other securities. The evil had grown to such dimensions, not only in this State, but elsewhere, that in the effort to correct it a new class of statutes, varying widely in their provisions, but known generically as Blue Sky Laws (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, 550), appeared upon the statute books. This article of the General Business Law is the contribution made by New York to the solution of the problem."

They provide a safeguard against fraud at its inception, and as a preventive they are "of greater benefit to society than the punishment of the offender after the crime has been committed and innocent persons have been made to suffer." (*Standard Home Co.* v. *Davis*, 217 Fed. 904, 919.) So urgent has become the necessity of preventing the evils which sprang up in the unchecked activities of unscrupulous vendors of stock in visionary, ill-considered and fraudulent enterprises that every State in the Union, with the exception of Delaware and Nevada, has adopted some form of legislation designed to curb or correct the evils.

While the provisions for attaining the salutary objects aimed at vary in the different States, the types of legislation may be classified under two heads: (1) Laws which require a license as a prerequisite for the right to sell certain securities, with the penalty of forfeiting such right in the event the business is not conducted honestly or with a reasonable degree of conservatism, and (2) laws which exact no license, but which provide for the forfeiture of the unrestricted right to continue the business of selling securities in the event of fraudulent practices. Statutes of the first type are in force in forty-three States, and are the ones properly referred to as Blue Sky Laws. They provide that all sellers of certain types of securities must obtain a license as a prerequisite, which

license is only granted after due examination of the nature of the security to be dealt in and the character of the applicant. Provisions are also contained for revoking licenses, for causing the examination of witnesses under oath and the production of books and papers. The administration of the law and the conduct of inquiries is intrusted to officials generally known as securities commissioners. In some States the function is delegated to the Secretary of State, the State Comptroller or the Railroad Commissioner.

In the second type of statutes, such as the one in this State and also in New Jersey and Maryland, no license requirements are prescribed, but the Attorney-General is intrusted with the duties of checking fraudulent practices by initiating inquiries and following these up with appropriate injunctive proceedings in court.

The policy of these laws has been approved as non-discriminating and a proper exercise of the police power, and the laws declared constitutional in the following decisions: *Merrick* v. *Halsey & Co.* (242 U. S. 568, Michigan statute); *Hall* v. *Geiger-Jones Co.* (Id. 539, Ohio statute); *Caldwell* v. *Sioux Falls Stock Yards Co.* (Id. 559, South Dakota statute); *Standard Home Co.* v. *Davis* (217 Fed. 904, Arkansas statute); *People* v. *Simonsen* (64 Cal. App. 97); *Stewart* v. *Brady* (300 Ill. 425); *King* v. *Commonwealth* (197 Ky. 128); *State* v. *Agey* (171 N. C. 831); *Hornaday* v. *State* (208 Pac. [Okla. Cr. App.] 228); *Bagley Co.* v. *Cameron* (282 Penn. St. 84); *Biddle* v. *Smith* (148 Tenn. 489); *People* v. *Federated Radio Corporation* (216 App. Div. 250). All these decisions, except the one last mentioned, involved the constitutionality of laws of the first type — licensing statutes. There is no decision of a court of highest instance dealing with the type of law such as the Martin Act except the case of *Matter of Ottinger* v. *Civ. Serv. Comm. (supra)*. In the latter, section 359-a, which exempts certain employees from civil service examinations, was held unconstitutional. This result does not, however, affect the law as a whole, since section 359-b (as added by Laws of 1923, chap. 600) specifically declares that should any provision be held unconstitutional such decision shall not affect any other section. While the case decided involved the narrow issue of the constitutionality of section 359-a, Judge CARDOZO nevertheless discussed the purpose and scope of the entire act in seeming terms of approval. Even section 352, around which the present controversy centers, appeared to secure its meed of praise, particularly that phase which insures secrecy in the preliminary investigation by the Attorney-General. This feature of the law has been the subject of bitter attack in the present proceeding. Referring to it, Judge CARDOZO said: " Secrecy is essential, not only for the prosecution of the guilty, but also for the protec-

tion of the innocent, who might be ruined in business or reputation if the mere fact that they were under investigation were to become known to the public."

But it may properly be argued that the question of the propriety of the powers granted to the Attorney-General under section 352 were not squarely before the Court of Appeals, and what is, therefore, said in that case may be regarded as dictum. It is, therefore, necessary to give independent consideration to the particular constitutional objections raised in the instant case. The main objection involves the methods which the Attorney-General is authorized to employ in the preliminary investigation under section 352. These are characterized by the petitioner as inviting star chamber proceedings, where the public official is both prosecutor and judge and the accused has no opportunity to present his defense or to be represented by counsel, and the inquiry is secret. In order properly to evaluate these objections we must understand the function of the Attorney-General under the act.

In the administration of this law, and particularly of section 352, that official is not acting as a prosecuting official at all, but in his capacity as an independent executive officer of the State government. (Mills Fraudulent Practices in Respect to Securities & Commodities, 46.) He is charged with duties analogous to those exercised by the Securities Commissioners or other licensing bodies administering the Blue Sky Laws of other States. A seller of securities in those States, even though licensed, may be subject to investigation by the administrative officer, who possesses the right of subpœna and the power of compelling the production of papers and of taking testimony under oath, with penalties prescribed for failure to obey. A typical provision is found in the State of Oklahoma, which authorizes the Commission upon its own initiative or upon complaint of any responsible person, to "make or have made such special inspection or investigation as they may deem necessary in connection with the promotion, sale, disposal, or offering for sale or disposal in this State, of any certificates, shares, stocks, bonds    *    *    *    to determine whether the same constitute a violation of this act or any other statute of this State, by any individual, co-partnership, corporation, or association, promoting, offering, selling or pledging the same." The Commission is also given the power to subpœna and to compel the production of books, and any one refusing to answer any "*material question*" is guilty of a misdemeanor. (Comp. Stat. Oklahoma, 1921, § 2281.) And in Pennsylvania, to cite another instance, the Commissioner is given similar power, together with the right to invoke the aid of the Court of Common Pleas to enforce obedience. (Laws of

Pennsylvania, Act No. 310, 1923, as amd. by Act No. 284, 1925.) A similar provision for secrecy, too, as in the New York statute, is therein provided, all information being treated as confidential and not to be disclosed to the public except under order of the court.

The purpose of such investigation under the licensing statutes is obvious. If the administrative authorities find that the continuance of the particular business by the person against whom the complaint has been lodged is detrimental to the public interest, they may proceed to revoke his license. A public hearing for this purpose on charges which may be unfounded might work grave injustice and accomplish the ruin of the person complained against. The preliminary investigation, therefore, far from being a star chamber proceeding, works to the advantage of an innocent person in saving him from the consequences of publicity. Such secrecy is a feature which is spoken of by Judge CARDOZO (*Matter of Ottinger* v. *Civ. Serv. Comm., supra*) with approval.

The investigation may lead to prosecution, and in some instances the statutes of other States even provide for a brief summary suspension of the right to continue business until certain information has been furnished. No such drastic administrative feature is contained in the New York act. But it is significant that the statutes of both Maryland and New Jersey, the former chapter 552 of the Laws of 1920, the latter chapter 234 of the Laws of 1920 (p. 444), contain the same right of temporary suspension by the Attorney-General. Both these statutes antedate our law, have been in force since 1920, and apparently, judging by the absence of judicial decisions, that drastic power has not been the subject of abuse. The New Jersey statute provides as follows (at p. 446): " If it shall appear to the attorney-general that an irreparable public injury is imminent unless such an order is issued, before a full investigation can be made, he may, pending such investigation, issue a preliminary restraining order, but the same shall be accompanied with a demand for information as to the facts relied on in issuing the order, and such temporary order shall remain in force until such information is furnished and two days thereafter."

A violation of such order is made a high misdemeanor, which is equivalent to a felony in this State. At first glance such power in the hands of the Attorney-General might be regarded as vesting that officer with judicial power. But, bearing in mind that his position in the matter is that of the Securities Commissioner under the Blue Sky Laws, we see that such power is no greater than or essentially different from that of the Commissioner in temporarily suspending a license. While the power of the Attorney-General to issue restraining orders is not involved in the case before me —

the New York statute lacking this feature — it is discussed here because it emphasizes the position of the Attorney-General in administering the law not as a prosecuting officer extorting evidence under duress, to be used as a club in the prosecution of the witness, but as an executive officer to restrain activities detrimental to the public interest.

The petitioner objects to the proceeding under section 352, because it is not taken under judicial auspices, and tacitly admits that the procedure under section 353 *et seq.*, whereby an investigation is authorized by the Attorney-General before the court or a referee, is constitutional. The provisions of those sections have been upheld as constitutional (*Matter of Davies*, 168 N. Y. 89) in connection with the question of the validity of the Donnelly Anti-Trust Act (Gen. Business Law, §§ 343–346), after which sections 353 to 359 are closely patterned. But if the power of investigation were limited to inquiry under judicial auspices certain deleterious consequences might ensue. Great injury might result if upon every complaint the Attorney-General were compelled to resort to an examination under section 354, with its attendant publicity. Moreover, his inability to sift the facts prior to such public examination would hamper the administration of the law, which is less concerned with punishing the evildoer than with checking any further activities detrimental to the public interests. A confidential investigation as provided in section 352, moreover, is in reality of advantage to a person suspected or charged with unlawful activities who is innocent of any wrong.

But an attempt has been made by the petitioner to draw a distinction between licensing statutes under which a seller of securities must needs submit to an investigation as a condition precedent to permission to do business, and the situation here, where normally his authority to engage in such business is unrestricted. The distinction is not well founded. This State, in contradistinction to most of the others, has chosen to grant, so to speak, a general license to conduct such vocation unrestricted by any preliminary license requirement upon the implied condition that all parties so engaging shall act fairly and honestly and violate no provision of the law. When they fail to do so the general license as to them is subject to revocation. The situation is thus the same as if a specific license had been issued in the first instance, as in the case of numerous vocations which are the subject of regulation, and such license had been revoked for cause. The right to grant a license, as a rule, implies a right to revoke it. Under the Blue Sky Laws as such the conduct of the business requires as a condition precedent the obtaining of a license from

the public authorities, but the continuance of the privilege is also subject to certain conditions subsequent, namely, the pursuit of the business in accordance with law. If the latter condition is broken the privilege lapses. In the New York statute, as in that of the two other States mentioned, the license prerequisite as a condition precedent is lacking. The Legislature in its wisdom has declared that no bar should be placed upon any individuals, firms or corporations to engage in the business, and while recognizing the possible abuses that might arise and the necessity of regulation to avoid these, it has nevertheless granted virtually a blanket license to all those choosing to pursue the calling. On the other hand, it has provided summary methods of checking those who might abuse the liberality of the law and engage in unlawful practices, not merely by punishing those who have offended, but by restraining them from doing business so as to save prospective victims from the consequences of fraudulent dealings. The right to such regulation of a business around which no restrictions are normally placed is undoubted. The language of the court in *Stewart* v. *Brady* (300 Ill. 425, 442) is fully applicable to such a situation: " While the privilege of engaging in a lawful business is the right of every individual, it is subject to the police power and must be exercised in accordance with the requirements of statutes passed in the exercise of that power for the protection of the public."

Such regulation cannot be confined to business in which a license is a prerequisite, but may extend to one which is not originally licensed, particularly where public and economic policy has recognized the need of regulation and given expression to this need by laws emanating from the legislative body of practically every State in the country. The power of investigation, with the necessary means for enforcing it, if properly exercised by a securities commissioner, is equally justified in the hands of the Attorney-General, who occupies an analogous position in this State. Granting, however, the propriety of the general purpose of section 352, certain specific objections urged by the petitioner must be considered. The first is that it compels a witness to give evidence against himself. It is argued that section 359 gives a witness immunity only as regards the testimony he gives which " may tend to convict him of a crime," and if he is ordered to testify over his objections that such evidence may tend to *incriminate* him, his testimony may nevertheless be used against him. Whatever slight merit there may have been in this contention prior to this year has been eliminated by the amended statute (Laws of 1926, chap. 617, § 6), which allows a witness to claim immunity

from prosecution on the ground that the evidence required of him " may tend to *incriminate him or to convict him of a crime.*"

The second objection that the section gives the Attorney-General an indiscriminate right to examine generally the books of a business firm is likewise without merit. · The power must be reasonably interpreted.    As is said in *People* v. *American Ice Co.* (120 App. Div. 234): " The plaintiff should not be given a roving commission to examine every scrap of paper in defendant's possession in the hope that something may be found to sustain the allegations of the complaint."

The matters upon which an investigation is sought must be relevant to the inquiry.    If an examination should be sought on immaterial matters, or if it should be a broad general inquiry, the person examined could doubtless obtain appropriate relief, and his refusal to give such testimony or to produce unnecessary books would not be without reasonable cause, and would not, therefore, render him liable to conviction for a misdemeanor.    In the instant case the subject-matter of the examination is within narrow limits, and no general inquiry is contemplated, and it is presumptively not open to criticism.

A further grievance alleged is that an inquiry of this nature compels a witness to disclose trade secrets and confidential dealings with third persons.    This objection imputes improper motives to the Attorney-General or his staff and implies that such information obtained might be publicly disclosed for the benefit of business rivals.    The consequences feared, experience has shown, are unfounded.    The sweeping power of complete examination and audit which has been exercised by the Tax Commission in the examination of the books of income taxpayers has never been questioned on that score, and has led to no abuses or improper disclosures feared by the petitioner.    Besides, any disclosure of confidential information obtained upon this inquiry is specifically made a misdemeanor.    Another criticism which does not go to the statute itself does, however, merits consideration.    The petitioner has been allowed merely as a matter of grace to have counsel attend him at the examination.    The·limits of such inquiry and the extent to which the witness may avail himself of his constitutional and statutory rights are technical, and the witness should have the benefit of the advice of counsel in view of the dire consequences which may ensue to him in misconceiving his rights.    Even in proceedings supplementary to execution, where no questions of self-incrimination can ordinarily arise, and where the examination is practically under the control of the court, it has been held that while a witness is not entitled to counsel as a matter of right, such counsel should not be arbitrarily excluded.

In *Schwab* v. *Cohen* (13 N. Y. St. Repr: 709) MCADAM, Ch. J., in commenting upon the right of a witness in supplementary proceedings to be attended by counsel, said: " Counsel should not be excluded from participating in the examination of a witness, when it is made to appear that the rights of the witness, and the due and orderly administration of justice require such aid for the elucidation of the whole truth and the proper information of the court."

We now come to the final objection of the petitioner to the constitutionality of section 352. It is argued that the power to subpœna and examine under oath is judicial in its nature and cannot be delegated to the Attorney-General. I have already indicated that this power is given to that official in his administrative capacity and not as prosecuting officer, and that it is possessed perhaps even to a greater extent by the Commissioners who administer the Blue Sky Laws in other States. In all cases the power to punish is left to the court. The refusal to answer a material question does not *ipso facto* constitute a misdemeanor, but the determination of whether such an offense has been committed is a subject of judicial inquiry by the courts.

If, then, in the exercise of the power of subpœna and examination of witnesses under oath the Attorney-General acts as an independent executive officer, the delegation of such power is in accord with similar authority given to other public officers. A fairly complete enumeration of administrative officers and commissions in whom such power is vested by statute will be found in the recent case of *Dunham* v. *Ottinger* (127 Misc. 683, 695, 696), in which section 352 was held constitutional by Mr. Justice ROSCH. Numerous decisions are also cited in that opinion to indicate the propriety of such delegation of power to the officers and commissions enumerated.

But the petitioner urges that the powers of inquiry and subpœna so delegated relate to the administration of public institutions or departments of government, and that some — such as the examination of banks — follow merely from the reserve power of the Legislature to amend charters. The distinction is not well founded. The power of the Attorney-General under the Martin Act relates to the administration of a public function. It cannot be properly denied that an examination by a Securities Commissioner in a State which has a licensing law is pursuant to the exercise of an administrative function. In fact, under the statutes of some States his province is specifically analogous to that of the Banking Commissioner in his sphere. (Gen. Stat. Kansas [1915], § 9466; Comp. Stat. Oklahoma, 1921, § 2280.) The Attorney-General occupies a position in the administration of the Martin Act similar to those of the Commissioners under the Blue Sky Acts, without, however,

the power of licensing. The need of protecting the safety of bank deposits has given rise to bank examinations by a public officer with very broad powers of inspection, including that of subpœna. Similarly, the need of protecting, in some measure, the safety of investors, has given rise to the statutes herein discussed. The contention that the extensive powers of the Superintendent of Banks are to be legally sustained on the principle of the reserve power of the Legislature to amend charters of corporations is specious. If this were the sole source of such power vested in that official it would be impossible to sustain the authority of the Banking Department over individual or private bankers.

Finally, an attempt is made by the petitioner to support his contention that the power of subpœna intrusted to the Attorney-General is unauthorized, by reference to *Ward Baking Co.* v. *Western Union Telegraph Co.* (205 App. Div. 723). That case involved the interpretation of section 62, subdivision 8, of the Executive Law. It gave the Attorney-General authority, when directed by the Governor, to inquire into "matters concerning the public peace, public safety and public justice." The right of subpœna was given to him similar to that in section 352 of the General Business Law. Pursuant to such power the Attorney-General sought to obtain copies of certain telegrams sent or received by the Ward Baking Company, whereupon the latter sought to restrain the telegraph company from so doing. The purpose of the Attorney-General in endeavoring to obtain the telegrams was to secure evidence as to the circumstances surrounding the death of one Peters. The court held in effect that such inquiry was not one concerning the public peace, public safety and public justice, and decided that a subpœna for such purposes was unauthorized and an exercise of a judicial function. The decision must be read in the light of the peculiar circumstances of the case and the object of the section, which was dictated by wartime conditions. It has no bearing upon the exercise of the administrative function granted to the Attorney-General in the protection of the general public against a class of fraudulent practices to which experience has shown it has fallen an easy victim in the past.

I am, therefore, impelled to hold that section 352 of the General Business Law, read in connection with section 359, is constitutional, and that the delegation to the Attorney-General of the power of investigation and subpœna is in the public interest, and not the conferring upon that official of any judicial authority.

The motion to quash the subpœna is denied, with ten dollars costs. Settle order.