In the Matter of BERNARD K. MARCUS and Others, Petitioners.*

Supreme Court, New York County, January 31, 1931.

*Charles H. Tuttle,* for the petitioner Marcus.

*Emory R. Buckner,* for the petitioner Singer.

*John J. Bennett, Jr., Attorney-General [Max D. Steuer* of counsel], for the respondent.

HATTING, J.   Under the authority vested in him by article 23-A of the General Business Law (sections 352 *et seq.* as amd.), the Attorney-General has undertaken an inquiry into the acts and practices of the Bank of the United States and persons connected therewith to ascertain whether, in the administration of the affairs of the Bank of the United States and its subsidiary or associated corporations, fraudulent practices were indulged in.   In the course of the proceedings the Attorney-General appointed and designated Max D. Steuer his Deputy Attorney-General in charge of such investigation, and later appointed as assistant in the capacity of assistant attorneys Israel H. Perskin and Harry A. Gordon.   At the request of the district attorney of New York county, Mr. Steuer later accepted an appointment as assistant district attorney to conduct proceedings before the grand jury in New York county and to present to such grand jury any evidence of crime which might be available.   In the course of the proceedings before the Attorney-

General subpœnas were issued to a number of persons having knowledge of the affairs of the Bank of the United States and its kindred companies, among whom are the petitioners Marcus and Singer. Prior to the issuance and service upon these petitioners of subpœnas for their attendance, the investigation had already been in progress and the public examination of one Blauner, a director of the said bank, had without objection by the latter to the form of the investigation. Upon the service of the subpœnas upon these petitioners they made an application to this court *ex parte* for an order to show cause why the subpœnas issued to them should not be quashed, upon various grounds which will be later fully enumerated, and an order to show cause was obtained which contained what has been construed to be in the nature of a stay of the investigation by the Attorney-General until the entry of an order determining the matters arising on this motion. Said order by its language stayed " any duty on the part of the petitioners to attend at the inquiry referred to in the petition." Preliminary objections to that part of the order to show cause which restrained the duty on the part of the petitioners to attend the inquiry as being in violation of section 879 of the Civil Practice Act and section 882 (as amd. by Laws of 1930, chap. 378), were made by the respondent on the ground that notice of such application was required to be given to the petitioner before the same was granted. However, in the light of subsequent events and the statement of the Attorney-General, by his representative, that pending a determination of this motion no examination of the petitioners would be undertaken, the preliminary objections to that part of the order to show cause are now unimportant.

As to the principal part of the application, which is confined to quashing the subpœnas, the petitioners base the application chiefly upon the fact that Max D. Steuer, who was appointed Deputy Attorney-General, has had multifold relationships with litigations involving or relating to the affairs of the Bank of the United States, and that he had made public announcements which the petitioners contend indicated a prejudice against the Bank of the United States and persons associated with it; that in the dual capacity of a Deputy Attorney-General and assistant district attorney he is acting in two incompatible offices and principally that the contemplated investigation by the Attorney-General is announced to be a public investigation. Supporting their contention that the multifold relationships of Mr. Steuer disqualify him from acting in a public capacity in the conduct of this investigation, the petitioners have recited five actions, some of which are still pending and in which Mr. Steuer acted either in the capacity of attorney of record

or as counsel to the attorneys of record. In all of these actions it has been disclosed that he represented interests adverse to those of the Bank of the United States, and a consideration of the matters involved in those litigations shows a connection not directly with the Bank of the United States, but sufficiently remote therefrom to remove the suspicion of bias or prejudice. It may be said upon this subject that immediately upon his appointment as Deputy Attorney-General Mr. Steuer severed all connections with the pending litigation and that association, if it could have been deemed a disqualification, has wholly terminated. The contention of the petitioners that the public utterances of Mr. Steuer, either through the medium of addresses to a gathering in a public school, in the press, or otherwise, to the effect that it was his intention that the investigation should be thorough and that if evidence of misfeasance or malfeasance or any other reprehensible or actionable conduct on the part of persons in control of the affairs of the said bank were found, that they should be the subject of prosecution, where prosecution would lie, indicated prejudice, is unfounded. This was merely an expression of the duty which devolves upon an examining official in the investigation which is in progress, and prosecution, if found warranted, is in fact the very purpose of the investigation. It cannot be said that this declaration of intention is evidence of a prejudice or passion, or of an intention to persecute any of the witnesses at the investigation, and indeed a perusal of the entire announcement charged to Mr. Steuer, and which is purported to have been broadcast as the address of Mr. Steuer at a mass meeting held at the Girls' Commercial High School in Brooklyn indicated an intention that the investigation to be conducted should be fair and impartial, and that no attempt would be made at particular persecution, neither would an attempt be made to involve any person unnecessarily nor without sufficient and proper evidence to justify it. Therefore, as to the contention of the petitioners that Mr. Steuer by reason of such relationships and his public utterances had become disqualified to be the examining agency may be disposed of with the conclusion that no evidence of such disqualification exists.

Another point strongly urged by the petitioners is that Messrs. Singer, Perskin and Gordon are associated as counsel to a group of the depositors and stockholders of the said bank and its subsidiary companies who have organized a Bank of the United States Depositors' and Stockholders' Association with the expressed purpose of recovering for the depositors and the stockholders all that might be available to them upon a strict and proper liquidation of the affairs of the Bank of the United States, and that such association

as counsel to the depositors and stockholders creates a conflict of interests in the dual capacity of counsel to the depositors and stockholders and that of examining agent in the Attorney-General's investigation, and is a further indication of his disqualification. To entertain this objection would be tantamount to holding that the interests of the depositors and stockholders of the said bank and its subsidiary companies are adverse to the interests of the directors and the subsidiaries of the said bank, so as to place Mr. Steuer in a position of advantage to use the agency of his investigation as Deputy Attorney-General in furthering the interests of the depositors. The very purpose of article 23-A of the General Business Law is the safeguarding of the public from exploitation through fraudulent practices. Having this fundamental purpose, there can be no conflict in interests between the examination for investigation into the affairs and practices of the officials of the Bank of the United States and the recovery of all of the available assets for the depositors and stockholders. The objection of the petitioners to the form of the investigation as a public hearing is predicated by them principally upon the authority of *Dunham* v. *Ottinger* (243 N. Y. 423).

It is strongly urged by the petitioners that this case affords reasonable cause for resisting the investigation in that, as petitioners contend, the public nature of the hearing deprives them of constitutional rights and privileges, and that under that authority they may insist upon secrecy in the course of the investigation. An examination of the *Dunham* case seems to indicate that one of the controlling features of that case was that an attempt was made at a public hearing to deprive a witness of the right of counsel, and inasmuch as the investigation might be preliminary to a criminal proceeding the attempt to deprive him of his private rights and liberty rendered that conduct improper and in violation of the witness' constitutional rights. The question whether or not constitutional rights were involved in the nature of the investigation as a public investigation, distinguished from a private investigation, was not before the court. A reference to the briefs used in the case, as the attention of this court has been directed thereto by the respondent, indicates that the petitioners in the *Dunham* case conceded the authority of the Attorney-General to conduct public hearings. Therefore, the *Dunham* case has no application to the contention of these petitioners that a public hearing is in violation of their constitutional rights. Reference to section 352 of the General Business Law (as amd. by Laws of 1927, chap. 365), and particularly to the closing sentence thereof, dispels all argument that the Attorney-General in the conduct of the investigation

authorized by that section is required to conduct his investigations in secret. Arguing upon this point, the petitioners contend that the provisions of this section, to the effect that any person disclosing the names of the witnesses or any information obtained through the investigation is guilty of a misdemeanor, are an indication of the intention of the legislators that the investigations empowered by this section shall be private. In this argument, however, the petitioners omitted a very important clause conclusive on the question. The language of the section is that any officer participating in such inquiry and any person examined as a witness in such inquiry, who shall disclose to any person other than the Attorney-General the name of any witness examined or any other information obtained upon such inquiry, except as directed by the Attorney-General, shall be guilty of a misdemeanor. The authority imposed by this last sentence in the Attorney-General to authorize the disclosure of the names of witnesses or of the information obtained is tantamount to authority in the Attorney-General to direct whether the inquiry in its entirety shall be secret or public.

Petitioners also claim that Mr. Steuer, acting in two constitutionally created offices, is acting in two offices whose duties are incompatible. There are authorities cited by petitioners which hold in numerous instances that two incompatible offices may not be held by the same person where the duties of the offices are in conflict. But an examination of those authorities indicates that they were judicial or quasi-judicial offices, whereas the office of Attorney-General has been deemed to be a ministerial office. This distinction alone is sufficient to avoid the application of the authorities cited by the petitioners, but a further impediment to an interference with the selection of deputies and assistants by the Attorney-General as a ministerial office is the express authority of article 23-A in section 359-a of the General Business Law (added by Laws of 1921, chap. 649). However, without determining the effect of the dual office of Deputy Attorney-General and assistant district attorney being held by one person upon the validity of any conclusion that may be reached in an investigation conducted under such circumstances, the matter of adjudicating the qualifications of Mr. Steuer in such dual capacity is not before this court. The question to be determined here is whether the Attorney-General, under the authority of article 23-A of the General Business Law, is authorized to conduct an investigation which is in progress and whether the subpœnas have been regularly and properly issued in legal form. If the petitioners contend that the examining agency, Mr. Steuer, by reason of his dual position, creates reasonable cause

for the witnesses to resist the investigation, their remedy is to refuse to answer or to refuse to be sworn if they are so advised.

All of the grounds which have been asserted by the petitioners to support this application have, we feel, been commented upon, and we are now confronted with the chief and controlling feature of this application, which makes it necessary that the application be entirely dismissed. The right to injunctive relief, which would be the effect of an order quashing subpœnas in this investigation, can only be had in pursuance of statute, and provision therefor is made in section 878 of the Civil Practice Act, which provides that an injunction may be had only in a pending action where the action itself is for an injunction, or where, pending the action, something is being done or threatened to be done which will make the judgment in the action ineffectual. A different situation might be presented here if the petitioners had instituted an action for an injunction and applied for preliminary relief in the action, but no action has been instituted and nothing has been presented to this court excepting the petition of the petitioners, which is wholly insufficient to confer upon this court jurisdiction to issue an injunction or to grant the relief prayed for — that is, quashing the subpœnas. This is not intended as an intimation that an action for an injunction will lie, but is expressed here as the controlling feature in this application, compelling the conclusion that the court, being without authority, is compelled to dismiss the petition and to deny the application.

The motion of the petitioners is denied, and the stay contained in the order to show cause vacated.