Submit order accordingly. .

In the Matter of the Application of ALEX DI BRIZZI, Petitioner. JOSEPH M. PROSKAUER et al., Constituting the New York State Crime Commission, et al., Respondents.

Supreme Court, Additional Special Term, New York County, May 22, 1951.

*Louis Waldman, Martin Markson* and *Seymour M. Waldman* for petitioner.

*John M. Harlan, Special Assistant to Attorney-General* and *Chief Counsel to New York State Crime Commission* (*Ben A. Matthews* and *Jerome G. Shapiro* of counsel), for respondents.

BENVENGA, J. This is a petition to set aside and vacate certain subpœnas served upon the petitioner by the New York State Crime Commission.

In March, 1951, Governor Dewey, by virtue of the authority vested in him by the Constitution and the laws of the State of New York, created the New York State Crime Commission, consisting of Joseph M. Proskauer as chairman and four other distinguished men as members of the commission.

The order creating the commission authorized it to investigate and take action concerning the relationship '' between organized crime and any unit of government anywhere in the State ''; to examine into the relationship '' between the government of the State and local criminal law enforcement '', with particular reference to certain specified problems, and directed the commission to report to the Governor and the Legislature.

The order expressly directs the Attorney-General to inquire into the matters therein set forth '' involving the public peace, public safety and public justice,'' and '' requests '' him to appoint the persons named as members of the commission, and also such counsel, deputies, officers and other persons as the commission might require.

The commission and the Attorney-General are thereupon authorized and directed to exercise '' all powers and authorities '' set forth in subdivision 8 of section 62 of the Executive Law, and '' any power to administer oaths and examine witnesses under oath, to subpœna any person, books, papers or records which I [the Governor] may have or have the power to delegate by virtue of any provisions of the Executive Law.''

Pursuant to the power and authority set forth in the executive order, the commission and the Attorney-General issued a subpœna requiring the presence of the petitioner to testify as a witness. In response, the petitioner appeared before the commission and, upon his refusal to sign a waiver of immunity, he was not examined, but was served with a second subpœna requiring his presence at a later date. Meantime, the present proceeding was instituted.

1. The question here is whether the Governor, as head of the Executive Department of the State (N. Y. Const., art. V, § 4), charged with the duty of taking care " that the laws are faithfully executed ", and with the responsibility of communicating by message to the Legislature " the condition of the state," and recommending " such matters to it as he shall judge expedient " (N. Y. Const., art. IV, § 3), is vested with power and authority by the Constitution and the laws of the State, to direct an inquiry into the matters set forth in the executive order, and whether the commission, in the conduct of the inquiry, have the power and authority to compel the attendance of witnesses and the production of books and papers.

Admittedly, the statutory authority for the Governor's order, assuming its existence, is to be found in the Executive Law.

Subdivision 8 of section 62 of the Executive Law (L. 1917, ch. 595), so far as pertinent, provides: " Whenever in his judgment the public interest requires it, the attorney-general may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice. For such purpose he may, in his discretion, * * * appoint and employ * * * such deputies, officers and other persons as he deems necessary, determine their duties and * * * fix their compensation. * * * The attorney-general, his deputy, or other officer designated by him, is empowered to subpœna witnesses, compel their attendance, examine them under oath before himself or a magistrate and require the production of any books or papers which he deems relevant or material to the inquiry."

Section 8 of the Executive Law, as far as material, provides: " The governor is authorized at any time, either in person or by one or more persons appointed by him for the purpose, to examine and investigate the management and affairs of any department, board, bureau or commission of the state. The governor and the persons so appointed by him are empowered to subpœna and enforce the attendance of witnesses, to administer oaths and examine witnesses under oath and to require the production of any books or papers deemed relevant or material."

It would seem, therefore, that the authority of the Governor to issue the executive order directing an inquiry into the relationship between organized crime and government is expressly conferred by section 62, which vests in the Governor the power to direct an inquiry into matters affecting public peace, public safety and public justice, and by section 8, which vests in him

the power to examine and investigate the management and affairs of any department of Government. Clearly, organized crime is a matter affecting the public peace, public safety and public justice, and the relationship of organized crime to Government is a matter which concerns the Governor, and which it is his duty to examine and investigate, either personally or by commission. (For a classification of offenses against public peace, public safety and public justice, see Penal Code [L. 1881, ch. 676], §§ 71–171, 385–447, 448–469, and 4 Blackstone's Comm. [Cooley's ed.], pp. 127–141, 142–153.) The commission, therefore, derives its power and authority not only from the provisions in section 62, but from those in section 8 of the Executive Law.

It is true that section 62 does not provide for a " New York State Crime Commission " as such. But that does not invalidate the order. The appellation is merely descriptive of the group of individuals and officers which comprise the membership of the commission. It is also true that the members of the commission are named in the executive order, and the Attorney-General, upon whom the power of appointment is expressly conferred, is " requested " by the Governor to appoint them as members of the commission. But that also has no bearing on the validity of the order. The fact is that the Attorney-General actually appointed each of the persons suggested by the Governor an "officer " of the Department of Law of the State of New York and a " member " of the commission. Certainly, the failure or refusal of the Attorney-General to follow the suggestions of the Governor in this respect would not have affected the validity of the order or the appointment of persons other than those named in the order.

In any event, the decisive question is whether the Governor is vested with authority to direct the inquiry for the purposes specified in the executive order, and whether the group of individual officers who comprise the commission have the power and authority to conduct the inquiry and compel the attendance of witnesses and the production of books and papers. That such power is expressly conferred by the cited provisions of the Executive Law seems clear. Indeed, such authority has repeatedly been conferred upon an executive officer or a commission in connection with an investigation incidental to, or in aid of, an executive function, and such power and authority has never been successfully challenged (see *Dunham* v. *Ottinger,* 243 N. Y. 423, 434–435, and cases cited, and *Matter of Mac-Namara,* 128 Misc. 84, 94, affd. 218 App. Div. 822).

As the Court of Appeals stated in the *Dunham* case: " The power to investigate and examine witnesses to the end of a better discharge of their duties has been conferred upon administrative boards and officials without successful challenge by so many statutes that it is undesirable to refer to them all." (P. 434.) This power " is akin to that right of the Legislature to investigate and to subpœna and examine witnesses to the end of safeguarding public interests by appropriate legislation and which is so well established as to have passed beyond the realm of controversy." (P. 435, citing *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463; see, also, *Matter of Doyle,* 257 N. Y. 244, and *Matter of Dairymen's League Co-op. Assn.* v. *Murtagh,* 274 App. Div. 591, affd. 299 N. Y. 634.)

That the inquiry directed by the Governor pursuant to which the petitioner was subpœnaed is in aid of the proper discharge by the Governor of his executive functions is too clear for argument. Rumors and gossip concerning the relationship of organized crime and certain units of government have been so persistent that the courts might well take judicial notice of the fact. That the Governor has been constrained to take cognizance of charges and countercharges concerning these matters is indicated by the fact that he has seen fit to issue the executive order.

The petitioner relies strongly upon *Ward Baking Co.* v. *Western Union Tel. Co.* (205 App. Div. 723). In that case, an indictment for the murder of one Clarence E. Peters was dismissed on motion of the defendant for failure to prosecute. The Governor, purporting to act under subdivision 8 of section 62 of the Executive Law, directed the Attorney-General to conduct an investigation into " the circumstances surrounding the death " of Peters. It was held that the statute did not authorize an investigation of this character, because the Constitution bestows no " judicial power " on the Governor or the Attorney-General. The court, however, recognized an exception to the rule, namely, " that the Legislature can confer the power of conducting judicial investigations for the sole purpose of securing information to advise executive action " (p. 733) which is the situation here. The *Ward* case is, therefore, distinguishable (see *Dunham* v. *Ottinger, supra,* pp. 436–437, and *Matter of MacNamara, supra,* p. 95). As the Court of Appeals pointed out in the *Dunham* case, the court in that case " simply reached the conclusion that a fair interpretation of the Executive Law * * * [§ 62, subd. 8], which it was attempting to utilize for

purposes of widespread investigation to ascertain whether a crime had been committed, did not authorize such a proceeding '' (p. 437). Here, the commission is not conducting an investigation to ascertain whether a specific crime has been committed or the connection of a particular person with that crime, but the relationship between organized crime and government.

Recognizing the persuasive authority of the *Dunham* decision and in an attempt to distinguish it, the petitioner asserts that the investigation was upheld because of the secrecy proceeding in the act involved (General Business Law, § 352). Suffice it to point out that the identical provision is contained in subdivision 8 of section 62 of the Executive Law. As in the case of the statute involved in the *Dunham* case, it is made a misdemeanor to disclose the name of any witness examined or any information obtained upon the inquiry, except as directed by the Governor or the Attorney-General.

The fallacy in the petitioner's argument is indicated by his reliance upon the *Ward* case. He proceeds upon the assumption that the Governor has attempted to utilize the authority vested in him for the purpose of instituting a '' roving '' investigation into crime and, in this way, to usurp the functions of the grand jury or the duties of the District Attorney. But, clearly, there is no basis for this contention. The commission is limited to the purposes defined in the executive order; it cannot exceed the powers thereby conferred. Moreover, it is expressly authorized and directed to extend assistance to and receive assistance from all public officers engaged in the investigation or the prosecution of crime or corruption, including the Special Assistant Attorney-General in Saratoga County and the District Attorneys of the Counties of Kings and New York, who are now engaged in special investigations.

The contention is also made, upon the basis of the Attorney-General's Report for 1918 (1918 Atty. Gen. 16), that subdivision 8 of section 62 was intended to apply only to sabotage, espionage and other wartime perils affecting the public peace, public safety and public justice. There is nothing in the language of the statute, expressly or impliedly, which justifies any such inference. Indeed, the refusal of the Legislature, on the recommendation of the Attorney-General, to repeal the statute, would seem to be convincing evidence to the contrary. In any event, the primary consideration is whether the statute is broad enough to include the present inquiry (Black on Interpretation of Laws

[2d ed.], pp. 288, 289; *People* v. *Abeel,* 182 N. Y. 415, 419, 421), even though the statute may have been enacted during wartime and as a wartime measure.

Other arguments are pressed respecting the rights, privileges and immunities of witnesses who are subpœnaed before the commission, such as right of counsel, the privilege against self incrimination and immunity against prosecution. It goes without saying that these rights, privileges and immunity are as much a part of the statute involved as though they had been actually incorporated therein. There is nothing to show that any of these constitutional safeguards for the protection of witnesses has been infringed. Indeed, they have been meticulously safeguarded by the commission.

The petition is in all respects denied. Settle order.