In the Matter of MICHAEL BOWERS et al., Petitioners. JOSEPH M. PROSKAUER et al., Constituting the New York State Crime Commission, Respondents.

Supreme Court, Additional Special Term, New York County, December 8, 1952.

*Henry A. Lowenberg* for petitioners.

*Theodore Kiendl, Special Assistant Attorney-General* and *Special Counsel to New York State Crime Commission (Ben A. Matthews, Jerome G. Shapiro* and *Arnold A. Hackmyer* of counsel), for respondents.

BENVENGA, J. This is a motion to quash and vacate subpœnas issued by the State Crime Commission requiring the petitioners to appear as witnesses at a public hearing to be held by it.

In March, 1951, the Governor of this State issued an executive order creating the State Crime Commission and authorized and empowered it, among other things, to inquire into matters concerning the public peace, public safety and public justice, and to conduct public or private hearings to accomplish its purposes.

In November, 1952, after the commission had conducted private hearings into matters concerning the public peace, public safety and public justice on the waterfront in the port of New York, the Governor, on the basis of information submitted to him by the commission, issued a supplemental executive order, wherein he recited that he " deemed it in the public interest and in aid of (his) functions and duties as Governor " that public hearings be held with respect to the subject matter of the inquiry; and, pursuant to section 63 of the Executive Law (formerly § 62), authorized and directed the commission to hold public hearings and upon such hearings to disclose information obtained in the course of its inquiry.

The petitioners concede the constitutional and statutory power of the Governor to issue the executive order creating the State Crime Commission, and the authority of the commission to subpœna witnesses, compel their attendance, and examine them under oath (see *Matter of Di Brizzi [Proskauer]*, 199 Misc. 670, affd. 278 App. Div. 913, affd. 303 N. Y. 206). They contend, however, that the question of the power of the Governor to direct the commission to hold public hearings was not presented

in the *Di Brizzi* case, and has not as yet been passed upon. They argue that the commission, being a creature of statute, has only such power as is conferred by section 63 of the Executive Law to " The attorney-general, his deputy, or other officer [or officers] designated by him " (see General Construction Law, § 35); that while the commission, as officers designated by the Attorney-General, may be authorized to hold private hearings, it is without authority to conduct public hearings, and the Governor cannot vest it with such authority; that, moreover, under section 63, such public hearings may be conducted only before a magistrate or the other judicial officers defined by statute (see Code Crim. Pro., §§ 146, 147).

1. There can be no question that the commission has only such power as is expressly or impliedly conferred upon it by section 63, and that the Governor cannot, by executive order or otherwise, enlarge its jurisdiction. But a reading of section 63 shows that, at the direction of the Governor or the Attorney-General, public hearings may be conducted before a magistrate or before the Attorney-General or the officer or officers designated therefor.

Section 63 requires the Attorney-General, when directed by the Governor, to inquire into matters concerning the public peace, public safety and public justice, and empowers the Attorney-General, his deputy, or other officer or officers designated by him — in this case, the State Crime Commission (see *Matter of Di Brizzi* [*Proskauer*] *supra*) — to subpœna witnesses, compel their attendance, and examine them under oath " before himself or a magistrate ". The section then declares any person subpœnaed to attend guilty of a misdemeanor if, without reasonable cause, he fails to obey the command of the subpœna or refuses to be sworn or examined; and makes it a misdemeanor for any officer participating in such inquiry to " disclose " the name of any witness examined or any information obtained upon such inquiry, " except as directed by the governor or the attorney-general."

Clearly, section 63 vests discretion and authority in the Governor or the Attorney-General to order a public hearing, and to direct that information obtained by the commission in the course of its inquiry be disclosed thereat. Moreover, the Governor has power to direct that the public hearing be held before a magistrate or before the Attorney-General or the officers designated by him.

In principle, the question was decided in *Matter of Marcus* (139 Misc. 675, affd. 232 App. Div. 731, appeal dismissed 255 N. Y. 630). There the Attorney-General designated a deputy and two assistant attorneys to conduct an investigation into the administration of the affairs of a bank, for the purpose of ascertaining whether fraudulent practices had been indulged in. The question presented was whether, under section 352 of the General Business Law (the Martin Act), the Attorney-General or the officers designated by him had authority to conduct the inquiry in public. In ruling that they had such authority, the court cited the provision in section 352, which authorizes the Attorney-General to disclose the names of witnesses and the information obtained by him in the course of its inquiry, and held that that provision " is tantamount to authority in the Attorney-General to direct whether the inquiry in its entirety shall be secret or public."

Section 352 (the statute involved in the *Marcus* case) is substantially similar to, if not identical with, section 63 (the statute here under consideration), except that, under section 352, the disclosure cannot be made, except by direction of the Attorney-General; while, under section 63, disclosure may be made by direction of the Governor or, in a proper case, the Attorney-General (cf. §§ 63, 352). Indeed, section 63 is the prototype of section 352. The provisions in section 63 here involved were added to the Executive Law in 1917 (see L. 1917, ch. 595), and the parallel provisions involved in the *Marcus* case were added to the General Business Law in 1921 (see L. 1921, ch. 649). The disclosure provision in section 63, is, therefore, tantamount to authority in the Governor or the Attorney-General to direct whether the inquiry in its entirety shall be secret or public; and, if a public hearing is directed, whether it shall be conducted before a magistrate or before the Attorney-General or the officers designated by him. Indeed, the *Marcus* case is indistinguishable and decisive of the question presented.

But even assuming, as counsel implies, that the meaning of section 63 is doubtful and ambiguous, certainly the practical construction placed upon it by the public officers charged with its execution and long acted upon and generally acquiesced in " is entitled to great if not controlling influence ". (*City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543, 549; *Grimmer* v. *City of New York*, 205 N. Y. 549, 550; *Matter of Farina*, 253 App. Div. 510, 516.) It suffices to say that the authority of the Attorney-General to conduct public hearings in connection

with inquiries under sections 63 and 352 seems to have been assumed since the enactment of these statutes. Indeed, the petitioners in the leading case of *Dunham* v. *Ottinger* (243 N. Y. 423), decided in 1926, conceded such authority in inquiries under section 352 (*Matter of Marcus,* 139 Misc. 675, 679).

2. The remaining question is whether the public hearings are " designed to harass, badger, browbeat and intimidate " the petitioners. In support of this contention, counsel for the petitioners asserts that Michael Bowers and John Keefe appeared at private hearings on three separate occasions, and on each occasion refused to answer " all " questions; that, therefore, no useful purpose will be served by having them appear at a public hearing. As for Harold Bowers, counsel alleges that this witness " answered most of the questions fully ", so that his testimony can be read without his presence at a public hearing.

There seems to be some question as to what actually occurred at the private hearings. But assuming the facts to be as alleged in counsel's affidavit, it would seem to be immaterial whether the witnesses, or any of them, may be guilty of a misdemeanor or of a contempt because of what may have happened in connection with the private inquiry. Nor is it material whether the witnesses, or any of them, refused to answer any or all of the questions put to them; for the privilege " is merely an *option of refusal,* not a prohibition of inquiry " (8 Wigmore on Evidence [3d ed.], § 2268; *Schiffman* v. *Bleakley,* 46 N. Y. S. 2d 353, 355). In other words, it is discretionary with the commission, in carrying out the mandate of the Governor, to require the appearance of any person, whether sworn as a witness at a private hearing, and even though he may have claimed his privilege against self-incrimination at such a private hearing and is expected to claim his privilege at the public hearing. The discretion of the commission in this respect cannot be reviewed, except to the extent of determining whether, as a matter of law, it has been abused (*Carlisle* v. *Bennett,* 268 N. Y. 212, 218). That it has not been abused in the instant case is clear.

In determining the question presented, I have assumed (especially since the point is not raised) that the court has jurisdiction, in a proceeding of this nature, to grant or deny the relief prayed for, though there is authority to the contrary (see *Matter of Marcus,* 139 Misc. 675, 681, *supra; People* v. *Horvatt,* 142 Misc. 803, 807, and 70 C. J., Witnesses, § 31, p. 98).

The motion is in all respects denied.