The People of the State of New York, Plaintiff, *v.* Floyd Whitman, Indicted as William Henry Dickson, Defendant.

Court of General Sessions, New York County, October 13, 1933.

*Thomas C. T. Crain, District Attorney [James T. Neary* and *John F. Joyce, Assistant District Attorneys,* of counsel], for the plaintiff.

*Albert J. Rifkind, Louis Mishell* and *Samuel Plumer,* for the defendant.

Collins, J.   The defendant was indicted by the grand jury of the county of New York on February 6, 1933, for the crime of murder in the first degree, charged with the killing of one Eugene Monahan, a sergeant of police, in a subway train in the county of New York, on the 4th day of February, 1933.   On February eighth the defendant, through assigned counsel, pleaded not guilty with a specification of insanity, and made a motion for the appointment of a commission in lunacy under the provisions of the Code of Criminal Procedure.   The court reserved decision on such motion and on the same date committed the defendant to the psychiatric division of Bellevue Hospital for examination, observation and report to the court.   Accordingly a report was made to the court on March 4, 1933, signed by Dr. M. S. Gregory, director; Dr. Samuel Feigin, senior alienist, and Dr. Frederic Wertham, senior alienist, stating in conclusion: " In summary: (a) This defendant

namely, William Dickson (or Floyd Whitman) in our opinion is not insane (not psychotic) at the present time, nor is he a Mental Defective; (b) Although not insane, he is of a Psychopathic Makeup, namely, that he is and always has been an abnormal individual."

The body of the report was quite elaborate, stating reasons for the conclusion reached, but permitting an inference that the defendant was in such a state of mind that a different conclusion as to his mental condition at the time of the commission of the crime might possibly be justified if an opportunity were afforded to elicit further details and facts relative to his past history, such as might be gleaned by a more protracted examination and from the obtainable information that might be secured through formal inquiry or commission.

On March 7, 1933, the defendant, through counsel, submitted further information in support of the motion for the appointment of a commission, and an argument was had, both sides being represented, at the conclusion of which the court granted the motion to appoint a commission and named Dr. Israel Strauss and Dr. Bernard Glueck, both psychiatrists, and John L. Sheppard, a lawyer. On May 4, 1933, after holding various hearings, the commission filed a report stating a conclusion as follows: " We are of the opinion:

" (1) That the above named defendant is not at this time, in such a state of imbecility, lunacy or insanity so as to be incapable of understanding the proceedings or making his defense on the trial of the indictment now pending against him; that he is now able to consult with counsel as to the conduct and preparation of the trial of the said indictment; and

" (2) That in accordance with the provisions of paragraph one, § 658 of the Code of Criminal Procedure, we find that at the time of committing the alleged criminal act, the said defendant was in such a state of ' lunacy or insanity ' and was laboring under such a defect of reason as not to know the nature and quality of the act he was doing and not to know that the act was wrong, as provided and in accordance with the provisions of § 1120 of the Penal Law.

"A detailed and comprehensive report is annexed hereto, and made a part of this report to the Court."

In the general report to the court the commission stated: " We agree with the findings of Dr. M. S. Gregory and his assistants on the staff of Bellevue Psychiatric Hospital that he is not insane (not psychotic) at the present time; that he is not a mental defective; that although he is not insane, he is of a psychopathic make-up, namely, that he is now and always has been an abnormal individual."

The report then goes on to make a statement as to the evidence received at the various hearings and conclusions reached, assuming a correctness of certain facts elicited and deductions drawn, and states: " It is our belief, therefore, that the defendant's claim that he remembers nothing of the commission of the act of which he is accused, has not been discredited by the evidence and that this being the case, the presumption is entirely in favor of his having in fact suffered from an amnesia on the basis of a psychopathic personality, possibly aggravated by a concussion of the brain incurred subsequent to the shooting. His responsibility was, to say the least, very much limited, if not altogether absent. No motive and no premeditation could be established for the crime. On the contrary, the man showed no resistance when apprehended, and his concern was to do to himself what he had unwittingly done to his victim.

" Taking into consideration all the facts at the disposal of the Commission, we feel that taking the statutory definition of responsibility as defined in Section 1120 of the Penal Law, namely that an individual is not responsible when suffering from such a diseased state of the mind as not to know the nature and quality of his act and that it is wrong, we must declare the defendant to have been irresponsible for his action at the time of the commission of the crime.

" Recommendation: Notwithstanding our belief that the defendant was irresponsible for the act committed, we feel that an individual who has such a psychopathic personality as is clearly present in the defendant may, under similar circumstances of starvation, deprivation, and the use of alcohol, commit overt acts which may be serious in their social bearing."

Attention is called to the fact that the conclusion of the commission is based upon certain deductions of fact reached from a consideration of the evidence before them, and there is apparently no room for any difference of opinion that the conclusion of the commission that the defendant was insane at the time of the commission of the crime is largely based on certain determinations of questions of fact. The recommendation referred to does not seem to afford to the court any justification for committing the defendant to an institution for the care and treatment of the insane at this time as an insane person.

This motion is made on behalf of the defendant " for an order confirming and adopting in all respects the findings and report of the said Commission in Lunacy, directing that a trial of the indictment be deemed abated and terminated by reason of the defend-

ant's insanity at the time of the commission of the alleged crime, within the meaning of Section 1120 of the Penal Law, and for such other and further relief in the premises as to the Court may seem just and proper."

Argument was had and the defendant has presented an elaborate brief through counsel, urging that the court has the power to grant the relief prayed for and that the motion should be granted. The People, through the district attorney, are opposed to the granting of the relief prayed for and take the position that the only action justified by the court is to order that the defendant proceed to trial.

The sections of the Code of Criminal Procedure relating to lunacy commissions and qualified examiners in lunacy and their effect governing the extent of the power conferred on or permitted to be exercised by the court, have not been considered at length by our courts in recent years. This motion, however, could be disposed of at this time by simply referring to the fact that even the finding of the commission in this case was dependent upon certain conclusions of fact which, aside from the construction and interpretation of the statutes referred to, are unquestionably within the province of the jury only, on a trial under the indictment on the issues involved (*People* v. *Barber*, 115 N. Y. 475; *People* v. *Nino*, 149 id. 317), and that, therefore, without further consideration of the questions involved as raised in the defendant's brief, this court would be fully warranted in directing that the defendant proceed to trial without further ado. Counsel for the defendant insists, however, in the very elaborate and well-considered brief submitted, that the common law and the statutes unquestionably confer upon the court power, if it is of the opinion that the finding of the commission is correct, and confirms the report of the commission, to grant the relief requested, and that it is the duty of the court, in the exercise of its discretion, to study the report of the commission and the facts of the case, and if it reaches the conclusion that the report of the commission is correct, even though based upon certain conclusions of fact drawn by the commission as a result of its hearings, to confirm said report, declare the indictment abated, and order the defendant discharged from custody, on the ground that the defendant is sane now and was insane at the time of the commission of the crime. This insistence on the part of counsel for the defendant seems to call for an opinion based upon the merits of the whole subject as a question of law.

There can be no question, as a general principle running throughout the history of our law, that no one " can be held responsible for, or even be guilty of, a crime, unless he has sufficient capacity,

mentally and otherwise, to commit it. Want of capacity therefore is a complete defense and not merely a mitigating circumstance." (16 C. J. 98, § 74.)

At common law the trial, the sentencing or the punishing of an insane person for a crime while the defendant is by reason of idiocy, imbecility, insanity or lunacy incapable of understanding the proceedings or of making his defense to such proceedings, was prohibited, and the court in which an indictment was pending might by aid of a jury or by other discreet and proper methods in the discretion of the court, inquire into and determine the question of the sanity of such a person. (*People* v. *Rhinelander*, 2 N. Y. Crim. Rep. 335.)

Section 1120 of our Penal Law, derived from our old Penal Code, sections 20 and 21, provides as follows:

" § 1120. Irresponsibility of idiot or lunatic. An act done by a person who is an idiot, imbecile, lunatic or insane is not a crime. A person cannot be tried, sentenced to any punishment or punished for a crime while he is in a state of idiocy, imbecility, lunacy or insanity so as to be incapable of understanding the proceeding or making his defense.

"A person is not excused from criminal liability as an idiot, imbecile, lunatic or insane person, except upon proof that, at the time of committing the alleged criminal act, he was laboring under such a defect of reason as:

" 1. Not to know the nature and quality of the act he was doing; or,

" 2. Not to know that the act was wrong."

It will be noticed from the provisions of this act that a person suffering from a diseased condition of mind, even if only to the extent of being " incapable of understanding the proceeding or making his defense," may not be tried, sentenced or punished while in such a diseased state of mind, but that he could not be " excused from criminal liability " unless he was " laboring under such a defect of reason " at the time of the commission of the crime to the extent of either not knowing the nature and quality of his act or that the act was wrong, or both; and that it could happen that a person who was mentally deranged, even though not to the extent of being excused from the commission of the crime by reason of such condition, could nevertheless not be tried, sentenced or punished while in that state and it would follow that some provision for his care and custody would have to be made in the meantime. Of course it would follow that a person insane to the excusable extent, if not in a condition to be tried, would require the care of the State as an insane person.

Our statute provides that in the event of a jury finding a defendant not guilty because insane at the time of the commission of the crime, if the defendant be in custody and it is deemed that his discharge be dangerous to the public peace or safety, the court must order him committed to a State asylum. (Code Crim. Proc. § 454.)

It devolves upon the courts, of course, in criminal cases preliminary to sentence, to pass upon the questions involved in insanity not alone as such questions may arise during the trial, but also preliminary and subsequent thereto.

Sections 658 to 662-a and section 836 of the Code of Criminal Procedure point out two methods of procedure; the one by the appointment of a commission and the proceedings thereunder, and the other by commitment to a hospital and appointment of qualified examiners for the purpose of determining the question of insanity and the incidental further action.

The commission in this case was appointed under the provisions of section 658 and the interpretation and application of sections 658 and 659, as stated, have an important bearing upon the determination of the question here involved. Section 658 provides as follows:

" § 658. Appointment of commission; their proceedings. When a defendant pleads insanity, as prescribed in section three hundred and thirty-six, the court in which the indictment is pending, instead of proceeding with the trial of the indictment, may appoint a commission of not more than three disinterested persons, to examine him and report to the court as to his sanity at the time of the commission of the crime.

" The commission must summarily proceed to make their examination. Before commencing they must take the oath prescribed in the Code of Civil Procedure, to be taken by referees. They must be attended by the district attorney of the county, and may call and examine witnesses and compel their attendance. The counsel of the defendant may take part in the proceedings. When the commissioners have concluded their examination, they must forthwith report the facts to the court with their opinion thereon."

These provisions, together with another paragraph eliminated by chapter 557 of the Laws of 1910, were originally incorporated into the Code of Criminal Procedure in 1881. The eliminated paragraph, which was between the present first and third paragraphs of section 658, and which will have some bearing on the determination of the question herein, provided as follows: " If a defendant in confinement, under indictment, appears to be at any time before or after conviction, insane, the court in which the indictment is pending,

unless the defendant is under sentence of death, may appoint a like commission to examine him and report to the court as to his sanity at the time of the examination."

Section 659 provides as follows:

" § 659. If found insane, trial or judgment suspended, and defendant to be committed to state lunatic asylum, if his discharge be dangerous to the public peace or safety. If the commission find the defendant insane the trial or judgment must be suspended, until he becomes sane; and the court, if it deem his discharge dangerous to the public peace or safety, must order that he be, in the meantime, committed by the sheriff to a state lunatic asylum; and that upon his becoming sane, he be redelivered by the superintendent of the asylum to the sheriff."

There is no direct statutory provision as to procedure if the commission find defendant sane now but insane at the time of the commission of the crime, but section 661 of the Code provides: " If the defendant be received into an asylum, he must be detained there until he become sane. When he becomes sane, the superintendent must give a written notice of that fact to a judge of the Supreme Court of the district in which the asylum is situated. The judge must require the sheriff without delay to bring the defendant from the asylum, and place him in the proper custody until he be brought to trial, judgment, or execution as the case may be, or be legally discharged."

It will be noticed, therefore, that even if defendant be bereft to the extent necessary for commitment, he must be returned for trial if he regain reason. Could it be said, therefore, that if the report of the commission, preliminary to trial, is to the effect that the defendant is sane now and capable of standing trial, that he is not to proceed to trial or final disposition in the same manner as if he had been of the committable type and had been committed and recovered his reason? In my opinion the statutes admit of no such construction.

It is urged that the phrase " or be legally discharged " has to do with the necessity of discharge if the finding that the defendant was insane at the time the crime was committed is confirmed and that the confirmation of such a report would necessitate the discharge of the defendant from custody. This would perhaps be true if there were a finding of a jury on the trial of the main issue that the defendant was not guilty because insane within the meaning of the statute at the time the crime was committed, but I do not believe that it applies to the preliminary or interlocutory finding of a commission conducted only as a procedural step as a guidance to the court. It is further urged that sections 659 and 661 as quoted

related particularly to the paragraph of the old section 658 quoted above, which was dropped by the Legislature by chapter 557 of the Laws of 1910, and had no direct bearing upon that provision of the present section 658 which relates " to his sanity at the time of the commission of the crime." I do not think this contention is tenable, because section 658 read the same prior to the Laws of 1910, except for the elimination of the paragraph referred to, and the dropping by the Legislature of that paragraph cannot be construed in any sense as a repeal of the provisions which were contained in the paragraph dropped, to the extent of rendering ineffective sections 659 and 661 as they apply to the present section 658.

In my judgment it is not difficult to ascertain why the Legislature dropped the paragraph referred to. Chapter 557 of the Laws of 1910 not alone amended chapter 658, but it amended as well section 836 of the Code of Criminal Procedure, which section specifically relates to the subject-matter contained in the paragraph of the old section 658 which was eliminated, and the Legislature, in providing two procedural methods for ascertaining the mental condition of the defendant in a criminal case and providing a course of action, in all likelihood concluded that the paragraph of section 658, eliminated, was covered by the provisions of section 836, as amended, and was not a necessary or advisable part of section 658, as previously existing. This seems to me to be the only logical conclusion as to the legislative intention in eliminating that paragraph.

Generally speaking, the question whether a defendant was at the time of the commission of a crime insane to such a degree as not to know the nature and quality of the act or that it was wrong, is for the jury to determine (*People* v. *Farmer*, 194 N. Y. 251, 265, and cases cited), and if this question is determined in the affirmative, it would require, by virtue of a Code provision previously referred to, a verdict of not guilty because insane at that time (Code Crim. Proc. § 454), and it has been held that even an insane person may be tried if he is competent to understand the proceeding and make his defense. (*People* v. *Rice*, 159 N. Y. 400.)

Can it be said, therefore, that where a commission regularly appointed makes a finding that the defendant was insane at the time a crime was committed, but is sane now, that a court would be warranted in granting such relief as is prayed for in this case and discharging the defendant from custody? I think not, and I am of the opinion that the statutes confer no such authority on the court, not even if the court believes that the commission is correct. The statutes were not intended to confer any such power on a

court, nor were they intended to give a judge power to assume the functions of a jury in determination of the main issue. In other words, in my opinion, these statutes are only procedural in their nature, and serve as a guide to the court in furtherance of insuring a fair trial to the accused, preventing the inhumanity of forcing an insane person to trial, and enabling the court in its conscience to avoid, as far as possible, the conviction of persons irresponsible because insane within the meaning of the law, but then only exercising the power necessary to that end in view of all the circumstances.

Counsel for the defense urged of what force and effect is the provision of section 658 providing only for ascertaining the mental condition of the defendant at the time of the commission of the crime, if, when a commission makes a finding that the defendant was insane at the time of the commission of the crime but does not report that the defendant is incapable of proceeding to trial, or, on the contrary, finds that he is mentally fit to proceed, the trial must be had notwithstanding such circumstances. Counsel further calls attention to the fact that there is no provision in the section under which the commission was appointed which requires a report on the present mental state of the defendant, and that, therefore, the report should not include the question as to whether or not he is immediately capable of proceeding to trial.

The most that can be said in this regard is that the statutes are imperfectly drafted, or are inadequate in declaring or directing further methods of procedure. I think the statute mentioned must be construed in connection with the other sections of that chapter (viz., §§ 658 to 662-a) and section 836 of the Code and section 1120 of the Penal Law, and that the requirement that the commission furnish information as to the mental condition of the defendant at the time of making the report is, therefore, to be implied as if such requirement were written into the statute. In the application of this section such has been the practice in our courts.

It is difficult to understand how, in the nature of the inquiry, " a commission " could consider whether the defendant was insane at the time the crime was committed without also considering and reporting on his mental condition at the time of the proceeding, examination or report. Certainly the line of reasoning indulged in by the defense cannot spell out a statutory direction to, or a requirement of, the court to discharge the defendant from custody on such a finding. I cannot find in the history and development of the law relating to insanity any warrant or justification for the court indirectly to find the defendant not guilty because insane at the time of the commission of the crime, and to discharge him from

custody. The decisions are uniform to the effect that the finding of a commission is not an adjudication of the fact of the question of insanity (*People ex rel. Thaw* v. *Lamb*, 118 N. Y. Supp. 389, and *infra*), and although some of the decisions, while holding as stated, indicate that the court is not bound to accept the finding of the commission and may reject their finding and proceed accordingly, I do not think it necessary, in all cases, to reject the finding of the commission to justify the direction of further proceeding in the nature of a trial, notwithstanding the finding of the commission. It seems to me that the report of the commission can be received and filed as such and the trial proceed, whether or not the finding of the commission was that the defendant was insane at the time of the commission of the crime. This seems to me to be sound reasoning. How is the judge to know whether or not the commission is correct in its finding, especially if, as in this case, there is some conflict on the part of experts, and why should the judge be required to take the attitude of either confirming or rejecting the report of the commission? The question of determining the issue of fact as to whether or not the defendant was insane at the time of the commission of the crime should be left, and I believe that this has always been the law, to the determination of a jury on the trial of the main issue. This determination must, of course, be deferred as provided by law if, and while, the defendant is mentally incapacitated to stand trial. It would seem that under conditions here prevailing, the value of the report of the commission to the advantage of the People or of the defendant would be its use for the purposes of the trial.

The particular practical uses to which a report of a commission may be made available are: If the commission report (1) that the defendant is sane now and was when the crime was committed, to facilitate and direct further proceedings; (2) that the defendant is mentally incapacitated to stand trial now and was or was not insane at the time of the crime, to commit to a State hospital until sufficiently treated, etc., to stand trial; (3) that the defendant is sane now but was insane at the time the crime was committed, to direct that defendant proceed to trial. In the event that proceedings must be resumed, to trial, because defendant is at the time of sufficient capacity, etc., whether as a result of treatment or as determined by reason of the report, the whole of the proceedings and report are of important service for the further guidance of the court and for the assistance of counsel on both sides in the preparation either of the prosecution or defense. As pointed out, it might be of great service to the defendant in establishing the evidence to sustain a plea of " not guilty with a specification of insanity,"

etc. He may employ experts who have the advantage of the report, and may in this connection, even if destitute, furnish a basis for an order of the court to employ experts at the expense of the State under the provisions of section 308 of the Code of Criminal Procedure, the scope of which has been extended by amendment by chapter 591 of the Laws of 1933. The report and finding could be of very practical value, also, in the event that the defendant was treated over a period of time, and was returned for trial as provided by the statute, in that the information and evidence as contained in the proceedings and report which is preserved of record, even if not admissible in evidence as such, might furnish a then positive basis to determine the main issue of insanity in the manner required by law.

A careful consideration of the cases on the subject seems to admit of no other than the foregoing general conclusion.

Although, as stated, there have been no recent adjudications, the subject-matter in theory and the old statutes have been passed upon at length by our courts. The leading cases on the subject in this State are: *People* v. *McElvaine* (125 N. Y. 596 [1891]); *Hughes* v. *Jones* (116 id. 67 [1889]); *Freeman* v. *People* (4 Den. 9 [1847]); *People* v. *Rhinelander* (2 N. Y. Crim. Rep. 335 [1884]).

In the *McElvaine* case the history of the procedure and progress of the legislation with reference to insanity is considered at length. The court says, RUGER, Ch. J., writing the opinion: " It is now a fundamental principle in all civilized countries that this defense, when established, shall furnish to the accused not only a protection against conviction for crime, but a sufficient reason why he should nor be tried or sentenced, of if tried and convicted, why the judgment of the court should not be executed; and this rule has, for a long time, been a part of the statutory law of this State. (§ 20 P. L.; 2 R. S. 697, § 2.)

" These statutes express a humane principle, and the law makers of the State have, by numerous provisions, so guarded the rights of such persons, that they cannot be lawfully punished for an act which was committed by them while in a state of insanity, or when they have become insane during or after a trial or conviction. (§§ 336, 658, 481, Code of Crim. Proc.) It is the duty, as it should always be the inclination, of courts to give effect to those provisions of law, and, so far as human judgment and intelligence can determine, to see to it that no person is punished for an act done while mentally incapable of distinguishing the character of such act, or is incompetent to understand and appreciate the cause and object of his punishment " (p. 601).

And on pages 605, 606, referring to section 658 of the Code as

it then existed, which included the paragraph referred to above as having been eliminated by the Laws of 1910: " The statute is very clear and unambiguous, and seems to invest the trial judge with a discretion to appoint a commission or not, as in the exercise of his judgment he may deem it proper or necessary to do. The statute seems to contemplate two cases in which a commission may be appointed: first, after a plea on the merits, and before trial, to determine his mental condition at the time of the commission of the crime; and, second, when a person in confinement under indictment, whether before or after conviction, appears to be insane, to determine his mental condition at the time of the examination. That the exercise of the powers thus conferred is discretionary seems to be confirmed by a consideration of the history of legislation on the subject. By section 2, title 7, chapter 1, part 4, R. S., it was provided that ' no act done by a person in a state of insanity can be punished as an offense; and no insane person can be tried, sentenced to any punishment, or punished for any crime or offense while he continued in that state.'. The method by which this provision of the statute was to be made effective was not, so far as I can discover, defined by statute until the enactment of section 32, chapter 135 of the laws of 1842, entitled ' An Act to Organize the State Lunatic Asylum, etc.,' whereby it was provided: ' If any person in confinement under indictment or under sentence of imprisonment, or under a criminal charge   *   *   *   shall appear to be insane, the first judge of the county where he is confined   *   *   *   shall institute a careful investigation   *   *   *   by jury or otherwise   *   *   *   and if it be satisfactorily proved that he is insane, said judge may discharge him from imprisonment and order his safe custody and removal to the asylum ' " (pp. 605–606).

" Upon a revision and codification of the statutes relating to the insane, effected by chapter 446 of the Laws of 1874, it was provided by section 20 of that act,' that ' if any person in confinement under indictment for the crime of arson, murder, or attempt at murder, or highway robbery, shall appear to be insane, the Court of Oyer and Terminer, in which such indictment is pending, shall have power, with the concurrence of the presiding judge of such court, summarily, to inquire into the sanity of such person   *   *   *   and for that purpose may appoint a commission to examine such person and inquire into the facts of his case and report to the court, etc.' Section 22 provides that ' if any person in confinement under indictment for the crime of arson, or murder, or attempt at murder, shall appear to be insane, the county judge of the county where he is confined, shall institute a careful investigation; call two or more reputable physicians and other credible

witness; invite the district attorney to aid in the examination, and, if it be necessary, call a jury * * * and if it is satisfactorily proved that such person is insane, said judge may discharge such person from imprisonment and order his safe custody and removal to one of the state lunatic asylums ' " (pp. 606, 607).

" We do not think the Code of Criminal Procedure has made any radical change in the mode of procedure or the character of the proceedings. The duty of making the examination referred to is now imposed upon the court before whom the indictment is pending, and it would be responsible for any violation of the law in respect to trying or punishing insane criminals permitted by it " (p. 608).

In *Hughes* v. *Jones* (*supra*) the court said, VANN, J., writing the opinion: " For nearly a century there was no statute authorizing any court or officer to issue a commission of inquiry, except as the right to judicially ascertain who were lunatics, etc., was implied from the acts committing their care and custody at first to the chancellor and later to the Supreme Court. The right to judicially learn whether a person was a lunatic or not was inferred from the right to his care and custody, provided he was such. Thus it appears that these proceedings have always been instituted in behalf of the public, at first, in behalf of the king, as the guardian of his subjects, and then in behalf of the people of the state who succeeded to the rights of the king in this regard. In both countries the theory of the proceeding was the same, resting upon the interest of the public. * * * The inquisition is an essential step preliminary to assuming control. * * * The law is set in motion by information of a more or less formal character spread before the court, not by a party, but, as in a criminal prosecution, by some one who assumes to act in the matter " (p. 76).

" We also agree with the learned General Term in its conclusion * * * that a commission to inquire as to the mental *status* of an alleged lunatic has no power to settle any such question. Such a tribunal is not adapted to so important an inquiry. It is not constituted for such a purpose, but simply to inform the conscience of the court as to a particular fact, for a special purpose. It would have no pleadings to guide it. No distinct issue upon the subject could be presented. It would be only incidental to the main question, which relates to existing incapacity. When that is found, the care of the person and estate belongs to the court. Unless that is found the court has no further jurisdiction, whatever else may be found. No other inquiry can become material except from its relation to that question. The command of the commission is to inquire whether the person *is* a lunatic, and *if* so,

from what time, in what manner and how. The period of the incapacity is of no importance unless it includes the present time " (p. 77).

In *Freeman* v. *People* ([1847] *supra*), a homicide case involving the issue of insanity on the subject of procedure and the theoretical basis therefor, the court said: " The statute declares that ' no insane person can be tried, sentenced to any punishment, or punished for any crime or offense, while he continues in that state.' (2 R. S. 697, § 2.) This, although new as a legislative enactment in this State (3 id. 832), was not introductory of a new rule, for it is in strict conformity with the common law on the subject. ' If a man,' says Sir William Blackstone, ' in his sound memory commits a capital offense and before arraignment for it he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defense? If, after he be tried and found guilty he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment he becomes of non sane memory, execution shall be stayed, for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution " (pp. 19, 20).

" The statute is explicit that ' no insane person can be tried,' it does not state in what manner the fact of insanity shall be ascertained. That is left as at common law; and although, in the discretion of the court, other modes than that of a trial by a jury may be resorted to, still, in important cases, that is regarded as the most discreet and proper course to be adopted (pp. 20, 21). * * *

" A trial of the question of present insanity is not *a trial of the indictment,* but is a preliminary to such trial. The object, in such a case, is simply to determine whether the person charged with an offense and alleged to be insane shall be required to plead and proceed to the trial of the main issue of guilty or not guilty (p. 21). * * *

" The common law, equally with this statute, forbids the trial of any person in a state of insanity. This is clearly shown by authorities which have been referred to, and which also show the reason for the rule, to wit, the incapacity of one who is insane to make a rational defense. The statute is in affirmance of this common law principle and the reason on which the rule rests furnishes a key to what must have been the intention of the Legislature. If, therefore, a person arraigned for a crime, is capable of understanding the nature and object of the proceedings going on

against him; if he rightly comprehends his own condition in reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subjects his mind may be deranged or unsound. This, as it seems to me, is the true meaning of the statute; and such is the construction put by the English courts on a similar clause in an act of parliament (pp. 24, 25). * * *

" The question upon this statute is the same as upon ours, that is, is the alleged offender insane. Russell says (p. 15): ' If a prisoner have not at the time of the trial, from the defect of his faculties, sufficient intelligence to understand the nature of the proceedings against him, the jury ought to find that he is not sane, and upon such finding he may be ordered to be kept in custody under this act ' (p. 25). * * *

" With these lights before us, the construction of the statute, which forbids the trial of any insane person, cannot be attended with much difficulty. A state of general insanity, the mental powers being wholly perverted or obliterated, would, necessarily, preclude a trial; for a being in that deplorable condition can make no defense whatever. Not so, however, where the disease is partial and confined to some subject other than the imputed crime and the contemplated trial. A person in this condition may be fully competent to understand his situation in respect to the alleged offense and to conduct his defense with discretion and reason (p. 27). * * *

" Where insanity is interposed as a defense to an indictment for an alleged crime, the inquiry is always brought down to the single question of a capacity to distinguish between right and wrong at the time when the act was done. In such cases the jury should be instructed that ' it must be clearly proved that, at the time of committing the act, the party accused was laboring under such a defect of reason from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing what was wrong ' (p. 28). * * *

" The only object of the preliminary trial was to ascertain the mental condition of the prisoner, in order to determine whether he should then be tried on the indictment. This, I repeat, was the only object of that trial, and the result at which the first jury arrived could have no possible bearing or just influence upon the trial of the main issue. The indictment was not to be tried piecemeal, but at one time, and by a single jury " (pp. 39, 40).

In *People* v. *Rhinelander* ([1884] *supra*), the defendant was accused of assault in the first degree. The court, SMYTH, Recorder, was advised by two physicians that the defendant was insane, and

appointed a commission under the provisions of section 658 of the Code of Criminal Procedure as it then provided, which included the eliminated paragraph referred to. The commission reported, two to one, that the defendant was insane. The defendant resisted confirmation of the report and the recommended commitment, notwithstanding the motion of the district attorney and the relatives of the defendant represented by counsel, to confirm and commit, if deemed dangerous. The People and counsel for the relatives of defendant insisted that the findings of the majority of the commission upon the question of the defendant's sanity " at the time of the examination upon that question is conclusive, and that the court must, by its order, suspend the trial," etc., until defendant becomes sane as provided by section 659 of the Code of Criminal Procedure. The recorder in his opinion reviewed the history of the law relating to insane persons in criminal cases in a manner similar to the other cases referred to in this opinion, to the same effect and conclusion, and said: " The examination secondly provided for [eliminated paragraph referred to] by § 658, is clearly intended as a means whereby the court in which the indictment is pending may be informed as to whether or not the defendant is, at the time of the examination, by reason of idiocy, imbecility, insanity or lunacy, incapable of understanding the proceedings, or of making his defense to such proceedings, and for that purpose, the court, in its discretion, is permitted to inquire into the matter by means of a commission of not exceeding three dis-interested persons, to be appointed by the court (p. 339).   *   *   *

" A careful examination of the provisions of chapter 5 of the Code of Criminal Procedure, and more particularly of sections 658 and 659 of that Code, has led me to the conclusion that there is no force in the grounds urged by the district attorney and the counsel, representing the relatives of the defendant.

" In no part of this chapter, or in the section above referred to, does it appear that the power to determine the question as to whether or not a person was laboring under such a defect of reason as would excuse him from criminal liability for his act, or that by reason of idiocy, imbecility, insanity or lunacy, he was incapable of understanding the proceeding or making his defense, is conferred upon the commission, nor do I find any provision which either takes from or in any way limits the power which has heretofore been exercised by criminal courts, both at common law and by statutes existing prior to the adoption of the Code, to inquire into such matters by and with the aid of a jury, or in such other way as may be found to be discreet and convenient. Nor do I find any provision which either in terms or by implication deprives the court, by

whose order the inquiry and examination is made, of reviewing the proceedings, and adopting or rejecting the opinion or conclusions arrived at by the commission. The Legislature have expressly limited the power of the commission to an examination into the matter referred to them, and to report the result of their examination, with their opinion, to the court, and for the purpose of enabling them to do so, authority is conferred upon it to examine witnesses and compel their attendance. When the commission has exercised these powers their functions cease. No other authority or power is conferred upon the commission, nor can any authority be found in the statute conferring the power upon it to determine finally these questions.

" If the Legislature intended to take away this power from the court, a power which it heretofore possessed, and which it was its duty to exercise, and to confer it upon a commission, it would have used such words in the statute as would clearly show the intention of the Legislature.

" By requiring the commission to report the facts and their opinion upon the facts to the court, the Legislature intended that these facts and the opinions based upon them were for the information and guidance of the court in any subsequent proceeding which it might become necessary for the court to adopt.

" The statute does not point out any way for reviewing the proceedings of the commission, nor is there any provision that I have been able to find contained in any of the statutes bearing upon the subject, and existing before the adoption of the Code of Criminal Procedure, providing for a review of such proceedings (pp. 340, 341). * * *

" It is insisted that by the use of the words ' if the commission find the defendant insane,' in section 659, that the Legislature intended to confer upon the commission the power to determine finally the matter referred to them; and that by the words ' the court must suspend the trial,' in the same section, all discretion which the court might otherwise exercise upon the question of suspending the trial is taken away, and that nothing remains to be done by the court but to order that the trial — or judgment, if one be rendered — be suspended until he becomes sane.

" If this contention is right, and that to ' find ' is to determine the fact, without the intervention of the court and the right to review the finding when it is objected to, then it is apparent that section 659 is in direct conflict with section 658, which section confers upon the commission whatever power they possess, and expressly limits the commission to an examination, a report of the facts disclosed by such examination, and an opinion upon the facts.

" Assuming, however, that these sections conflict, then it is the duty of the court to construe them together, and apply the well settled rules of construction so as to arrive at what the intention of the Legislature was (p. 342).  *  *  *

" Applying this rule to the sections in question, and construing them together, it seems very clear that the court has full power to review the proceedings of the commission, and adopt or reject their findings and opinions upon the question submitted to them as the evidence and the law may require (p. 342).  *  *  *

" The inquiry by the commission is limited by the statute to the ascertainment of the defendant's mental condition at the time of the examination, and is simply to determine whether he is in such a mental condition as to require him to plead and proceed to the trial of the main issue of guilty or not guilty, and it is immaterial, so far as this inquiry is concerned, what his mental condition was at the time of the commission of the alleged offense, except so far as it bore on his present mental condition. But if the inquiry which the commission was authorized to make into the defendant's mental condition at the time of the commission of the act alleged to be criminal, and the evidence, did sustain the claim of the learned district attorney and counsel for the relatives of the defendant, that he was then insane in consequence of delusions entertained by him, he would not be relieved from the circumstances of his criminal act if the evidence satisfied a jury that he knew the nature and quality of the act alleged to be criminal, or that the act was wrongful. And in this present proceeding it is sufficient to put him to his defense, that the fact be established to the satisfaction of the court, that he is capable of rightly understanding his own condition, the nature of the charge against him, and of conducting his defense in a rational manner, and that fact appearing, he is not insane, within the meaning of the law, although on some subjects his mind might possibly be deranged. *Freeman* v. *People*, 4 Denio, 9 " (pp. 345, 346).

All of these decisions, with uniformity and in the same general tenor, state at some length the basic theory or principle in our system of jurisprudence justifying and controlling judicial or statutory procedural inquiries relating to the mental condition of a person accused of the commission of a crime, and the power and the limitations on the courts in the exercise of such jurisdiction, and notwithstanding the many changes made from time to time by statutory amendment relative to methods of procedure, the law as laid down by these decisions is, in my opinion, still the same.

A commission is essentially in the nature of a proceeding *de lunatico inquirendo* conducted under the supervision of the

court itself and intended only as a guide to future conduct of the proceedings under the indictment, suspending their progress by a prescribed method in the event statutory incompetence of the defendant is judicially established at the time of report or directing their further prosecution to final judgment in accordance with due process of law, if the defendant is, in the opinion of the court, in the possession of his faculties to the degree of being capable of " understanding the proceeding or making his defense."   The report and finding of any means of inquiry and the information obtained thereunder are, of course, available, as previously stated, to the people or the defendant for any purpose or to any advantage that they might legally serve.

Although in operation they have been of great importance, particularly in avoiding the necessity of long drawn out trials, with opposing partisan experts in conflict, and likely consequent injustice in the determination of juries of the question of sanity, it is true that the statutes under construction (sections 658 to 662-a and section 836 of the Code) have led to considerable confusion in practice as a result of imperfect drafting and sporadic amendment and that complete redrafting and re-enactment was necessary and advisable and still is of the statutes relating to lunacy commissions, so called (sections 658 to 662-a).   Section 836 of the Code, which over a period of time had been amended, tinkered with, altered and changed almost beyond intelligent understanding, the provisions of which statute are referred to above as the second method of inquiry, has been amended by complete redrafting and correction in the last session of the Legislature (Laws of 1933, chap. 564, in effect July 1, 1933), and now seems adequately to state its purpose to meet all necessary requirements.

Section 658, etc., is said to be derived from Laws of 1871, chapter 666, sections 1 and 2, and section 836 from Laws of 1874, chapter 446, section 26.   Although both, particularly section 836, were amended from time to time and added to the Code, the general nature of their provisions were either declaratory of the common law or were the derivations of earlier statutes, some of which were referred to in the decisions above quoted, and notwithstanding the statutory changes made as stated, there was no provision at any time altering the fundamental principle behind their general statutory purpose and intent, namely, providing methods for carrying out the provisions or purpose as expressed in what now constitutes section 1120 of the Penal Law, in accordance with the theory and principle declared in the cited decisions.

The motion of the defendant for an order confirming and adopting

in all respects the findings and report of the said commission in lunacy and directing that the trial of the indictment be deemed abated and terminated by reason of the defendant's insanity at the time of the commission of the alleged crime, etc., is denied; and let an order be entered accordingly, and directing that the report of the " commission " be received and filed as such and that proceedings be resumed under the indictment as provided by law.